UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALBERT PATTERSON, d/b/a WORLD
WRESTLING ASSOCIATION, d/b/a
SUPERSTARS OF WRESTLING, INC. and d/b/a
W.W.A. SUPERSTARS,

              Plaintiff,

vs.

TVN ENTERTAINMENT CORPORATION,
GENERAL COMMUNICATIONS, INC.,
EBATES SHOPPING.COM, INC., MUSCATINE
POWER & WATER (MPW) CABLE,
AMAZON.COM, INC., EPINIONS.COM, PPVN
NETWORK HOLDING, INC., PAY-PER-VIEW
NETWORK, INC., TNA ENTERTAINMENT,
L.L.C. and MUZE, INC.,

              Defendants.

Case No. 04-CV-192

Magistrate Judge William E. Callahan

---

### DEFENDANT TNA ENTERTAINMENT LLC'S
### REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

---

#### INTRODUCTION

On May 7, 2004, Defendant TNA Entertainment, LLC ("TNA") filed a Motion to Dismiss Plaintiff's claim for lack of personal jurisdiction over this Defendant. Subsequent to the filing of TNA's motion, Plaintiff sought additional discovery regarding jurisdictional facts, and the Court permitted limited discovery including the taking of the deposition of Frank Romano. No other discovery was sought or undertaken by Plaintiff.

In his response brief to Defendant TNA's motion, Plaintiff has provided the Court a remarkably distorted summary of Mr. Romano's deposition testimony as well as a carefully edited summary of key provisions in TNA's License Agreement with iN DEMAND. In order for the

Court to understand the facts relevant to this jurisdictional issue, a brief supplemental statement of facts is necessary.

## SUPPLEMENTAL STATEMENT OF FACTS

Plaintiff's Amended Complaint alleges that all Defendants, including TNA, have violated various statutory rights claimed by Plaintiff as a result of Defendants' alleged use of various terms as to which Plaintiff claims trademark protection. Plaintiff then alleges that Defendants, including TNA, have violated Plaintiff's statutory rights by using those protected terms in the promotion and advertising of certain wrestling events broadcast on cable television. The only allegation in the Amended Complaint relating to the Court's personal jurisdiction over Defendant TNA is found in paragraph 12 where Plaintiff alleges:

> Defendant TNA Entertainment, LLC does business in Wisconsin by promoting and/or licensing wrestling entertainment events which are broadcast in Wisconsin on television, including Pay Per View.

Plaintiff's brief, at pages 4 and 5, acknowledges that Defendant TNA does not have any direct connection with cable companies that telecast, on a pay-per-view basis, the weekly wrestling events produced by TNA. Rather, Plaintiff recognizes that TNA records each wrestling event and provides a live feed of that event to a company called iN DEMAND, which is located in New York and which makes its own contractual arrangements with cable companies for broadcasting to viewing consumers. The respective rights and obligations of TNA and iN DEMAND are set forth in a License Agreement and an amendment to that License Agreement which is contained at Tab B of Plaintiff's response brief, filed under seal. Conveniently omitted from Plaintiff's description of that agreement is the provision in paragraph 11(l) of Exhibit A to the License Agreement, which provides:[1]

---

[1] The few provisions of the License Agreement quoted or described in this brief are not the confidential provisions of the Agreement requiring this brief to be filed under seal. However, TNA maintains that many of the Agreement provisions are highly confidential, and that Plaintiff's filing of the entire Agreement as an exhibit to his brief was properly done under seal.

> Independent Contractor. Licensor [TNA] and Licensee [iN DEMAND] are independent contractors with respect to each other. Nothing herein shall create any association, partnership, joint venture, fiduciary ***or agency relationship*** between them . . . Without limiting the generality of the foregoing, Licensee shall have no fiduciary obligation to Licensor, and Licensee shall not be deemed to have received any sums as agent or fiduciary for Licensor's account. (emphasis added)

The balance of the agreement makes it perfectly clear that although iN DEMAND has the exclusive right to sell the TNA wrestling programs, TNA does not control iN DEMAND's sale of the program or even determine what cable companies will be provided the programming. These matters rest exclusively within the discretion of iN DEMAND under the agreement. Furthermore, paragraph 2(b) of the General Terms and Conditions in Exhibit A of the License Agreement makes it clear that, although TNA is to provide certain types of promotional information to iN DEMAND, it is iN DEMAND that decides what advertising to use in connection with promotion of the TNA wrestling events. Specifically, paragraph 2(b)(ii) states that TNA grants to iN DEMAND the right to:

> Create and use (and authorize the creation and use of) written summaries, extracts and synopses of such Program for the purpose of advertising, exploiting and publicizing such Program (and any programming offered in combination therewith), its Exhibition hereunder and the services of Licensee and of authorized exhibitors.

While the License Agreement provides in paragraph 6 of Exhibit A that iN DEMAND cannot modify the "Program" (i.e., the wrestling event) without prior approval of TNA, no such limitation is contained in the agreement with regard to iN DEMAND's promotion and advertisement of the wrestling events. Rather, paragraph 2(b) allows iN DEMAND to determine the content, nature and distribution of its advertising. Once the iN DEMAND advertising is finalized, it is placed on iN DEMAND's website and access to the ad is provided to each cable system who has a contract with iN DEMAND and who, in turn, can modify or alter the ad which is displayed by that cable system. (See Romano Supplemental Affidavit, paragraph 4, filed herewith.)

These contractual provisions are particularly important in the context of this case where Plaintiff has attached to his Complaint, and also marked as Exhibit 3 to the Romano deposition, the advertisements which he claims TNA created and which contain the phrase which Plaintiff alleges was used without Plaintiff's authorization.[2] With regard to those advertisements, Plaintiff fails to point out that his counsel specifically asked Mr. Romano if TNA had, in its promotional information provided to iN DEMAND, used the phrase Plaintiff claimed was protected, and Mr. Romano replied that TNA had **not** used or authorized the use of that phrase. (Romano Dep. at 50-53)[3] Moreover, Mr. Romano testified that he had specifically reviewed the promotional materials given to iN DEMAND relating to these specific advertisements in Exhibit 3 of his deposition and that those materials provided by TNA did not use the words "World Wrestling Superstars" which Plaintiff claims is a violation of his trademark. (Romano Dep. at 63-66) Rather, it was iN DEMAND that chose these words for inclusion in iN DEMAND's advertisement. (Romano Dep. at 66).

Finally, Mr. Romano testified that none of the advertisements in Exhibit 3 of his deposition were created by TNA. (Romano Dep. at 59, 68) As for the first page of Exhibit 3, Mr. Romano testified he did not know who placed this ad. (Romano Dep. at 29) The remaining four advertisements contained in Exhibit 3 at pages 2 – 5 indicate on their face at the bottom of each page that the ads are contained on iN DEMAND's website and Mr. Romano testified that these ads were created by iN DEMAND. (Romano Dep. at 33, 59, 66, 67)

While it is clear that Plaintiff's response to Defendant's motion is premised almost entirely on the contention that the actions of iN DEMAND are, for jurisdictional purposes, the same as

---

[2] Plaintiff also references Exhibit D in his response brief, which is a video tape of an advertisement. Plaintiff does not indicate whether this was a video tape created by iN DEMAND and fails to support by affidavit or otherwise an assertion that this advertisement was run "countless numbers of times in Wisconsin." Interestingly enough, Plaintiff never even questioned Mr. Romano about this video during his deposition.

[3] Portions of the Romano deposition referenced in this brief are attached as Exhibit A. to the Romano Affidavit filed herewith.

actions by TNA, the deposition of Mr. Romano, the License Agreement and the supplemental Affidavit by Mr. Romano attached to this brief establish:

1. TNA did not control the type or placement of advertisements by iN DEMAND or the locations where such advertisements were disseminated to the public;

2. TNA did not control the type or placement of advertisements by the cable companies who had contracts with iN DEMAND and who were provided access to iN DEMAND's website ads.

3. TNA does not and has not controlled or influenced in any way iN DEMAND's choice of which cable companies it contracts with, or the terms of those contracts;

4. iN DEMAND sells many pay-per-view programs to cable companies with which it has contracts, far beyond the wrestling program provided by TNA, and TNA has absolutely no control over iN DEMAND's contractual relationships, commitments to and promotion of programs with those cable companies;

5. iN DEMAND does not negotiate contracts "on behalf of TNA with cable systems" as claimed on page 5 of Plaintiff's brief;

6. As provided in the License Agreement, iN DEMAND is an independent contractor; it is not an agent, fiduciary, partner or joint venturer with TNA.

## **ARGUMENT**

**I. PLAINTIFF HAS FAILED TO ESTABLISH THAT THIS COURT HAS SPECIFIC OR GENERAL JURISDICTION UNDER WISCONSIN'S LONG-ARM STATUTE.**

In *Giotis v Apollo of the Ozarks, Inc*, 800 F.2d 660 (7th Cir. 1986), a case relied upon by Plaintiff in its Response to TNA's Motion to Dismiss, the Seventh Circuit sets forth the test for determining whether personal jurisdiction exists:

> "The determination of whether a Wisconsin court would have jurisdiction over a non-consenting, non-resident is a two-step process. The first question is whether defendant is subject to jurisdiction under an applicable Wisconsin state long-arm statute. If not, then there is no jurisdiction, and the inquiry is at an end. If the answer to the first

> question is yes, however, then the Wisconsin court must determine whether the exercise of jurisdiction under the long-arm statute does not run afoul of the due process requirements of the Fourteenth Amendment. A district court sitting in diversity must not only ask these same two questions, but should ask them in the same order, since it is obviously preferable to decide a question on statutory rather than constitutional grounds." *Id.* at 665.

As argued in detail in TNA's Brief in Support of Motion to Dismiss at 5-8, this case does not meet the requirements of Wis. Stat. § 801.05 (Wisconsin's long-arm statute). Plaintiff's only reference to this statute is to comment that "Defendant's claim that iN DEMAND did not act on behalf of TNA for purposes of the Wisconsin personal jurisdiction statute at Section 801.05(4)(a) is wrong." (Plaintiff's Response, p. 4). Plaintiff offers no other argument showing that any other subsection of § 801.05 applies to TNA; nor does Plaintiff satisfy the precondition for application of subsection (4), which is expressly limited to an "action claiming injury to person or property." Furthermore, as discussed below, Plaintiff has failed to show that any advertising in Wisconsin was done "by or on behalf of the defendants" as required in subsection (4)(a). Therefore, because Plaintiff has failed to show that TNA is subject to jurisdiction under Section § 801.05, Plaintiff has failed to satisfy the first prong of the jurisdictional test, and TNA's Motion to Dismiss should be granted.

II. **ACTIONS AND CONDUCT OF IN DEMAND CANNOT BE ATTRIBUTED TO TNA FOR PURPOSES OF ESTABLISHING MINIMUM CONTACTS BY TNA WITH THE STATE OF WISCONSIN.**

Plaintiff's argument that this Court has personal jurisdiction over TNA because iN DEMAND was acting as TNA's agent is wholly without merit. The Supreme Court of the United States has made clear that the *defendant* must purposefully establish "minimum contacts" with a state in order to satisfy the Due Process Clause:

> "This 'purposeful availment' requirement ensures that a defendant will not be haled into court solely as a result of 'random', 'fortuitous', or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp v*

> *Rudzewicz*, 471 US 462, 475; 105 S Ct 2174, 2183-2184 (1985)
> (citations omitted) (emphasis in original).

The most important issue the court must evaluate in considering whether an agency exists for purposes of conferring personal jurisdiction is whether the defendant has retained the right to control the details of the alleged agent's work. *Bond v Harrel*, 13 Wis. 2d 369; 108 N.W.2d 552 (1961); *Carothers v Bauer*, 23 Wis. 2d 15; 126 N.W.2d 758 (1964); *Schmidt v Esquire, Inc.*, 210 F.2d 908 (7th Cir. 1954).

> "An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed. Other factors besides control should be considered, such as the place of work, the time of employment, the method of payment, the right of summary discharge of employees, the nature of the business or occupation, which party furnishes the instrumentalities or tools and the intent of the parties to the contract." *Bond v Harrel*, 13 Wis. 2d 369; 108 N.W.2d 552 (1961).

As set forth previously, the License Agreement provides that iN DEMAND has complete liberty as to the method and manner of its performance, and that TNA has no right to direct or control iN DEMAND's performance. Nothing in the contract gives TNA any right to discharge an iN DEMAND employee, and iN DEMAND's work is performed entirely at iN DEMAND's place of business, not at TNA's place of business. Moreover, both parties expressed their mutual intent regarding the nature of the relationship and disclaimed any rights with respect to the other except those rights consistent with the relationship of an independent contractor. Plaintiff's *only* allegations regarding TNA's contacts with Wisconsin relate to the iN DEMAND advertisements. Therefore, Plaintiff is unable to establish any act or conduct *by this defendant* which would support the exercise of personal jurisdiction over TNA.

Plaintiff cites only one product liability case—*Giotis v Apollo of the Ozarks*, 800 F.2d 660 (7th Cir. 1986)—in support of its argument that iN DEMAND's actions within Wisconsin should be imputed to TNA for purposes of establishing specific or limited personal jurisdiction over TNA. In

*Giotis*, the defendant sold fireworks to a distributor, who ultimately sold those same fireworks to a third party, who then used the fireworks, injuring plaintiff. The plaintiff then sued the defendant for his injuries. The Seventh Circuit did not find general personal jurisdiction over the defendant, but rather analyzed defendants' activities in the context of specific personal jurisdiction under Wis. Stat. § 801.05(4)(b), which focuses on the defendant's acts giving rise to the cause of action.[4] The Court found that the district court had specific personal jurisdiction over the defendant, reasoning that the manufacturer intended that its unaltered product would reach the forum state and that the product defect was directly related to the plaintiff's cause of action. 800 F.2d at 667. For several reasons, this case does not support Plaintiff's claim here that Wisconsin may exercise specific personal jurisdiction over TNA

First, the *Giotis* analysis focused entirely on a product liability claim, where jurisdiction was claimed under Wis. Stat. § 801.05(4)(b), a section of the statute clearly inapplicable here. Moreover, even in a product liability context, Wisconsin courts have held that "in order to establish personal jurisdiction based on a stream of commerce theory, plaintiff must show at a minimum that [defendant] knew that its products were headed for Wisconsin." *Allen-Bradley Company, Inc. v. Datalink Technologies, Inc.*, 55 F. Supp. 2d 958, 960 (E.D. Wis. 1999); *HyCite Corporation v Badbusinessbureau.com, LLC*, 297 F. Supp. 2d 1154, 1164-1167 (W.D. Wis., 2004) (holding that *the mere placement of the name of a trademark on a website*, much like the advertisement in a magazine with national circulation, is *not* enough to show that a defendant has intentionally targeted the forum state). As discussed previously, TNA has no control over where iN DEMAND promotes

---

[4] Indeed, the "stream of commerce" analysis used by the *Giotis* court *only* applies to specific jurisdiction, not general jurisdiction. *HyCite Corporation v Badbusinessbureau.com, LLC*, 297 F. Supp 2d 1154, 1162 (W.D. Wisc., 2004). (["I]n this circuit, the stream of commerce theory applies only in the context of specific jurisdiction. (citation omitted) The doctrine has no relevance to general "jurisdiction analysis.")

TNA's wrestling programs and is even further removed from the decision by cable companies who have contracts with iN DEMAND to take iN DEMAND's website ad and use it on their cable system.

Finally, *Giotis* involved a product liability suit brought against the manufacturer of a defective product, *where the product remained unchanged from the time of manufacture to ultimate sale and use*. To the extent Plaintiff seeks to establish specific jurisdiction under Wis. Stat. § 801.05(4)(a), he must focus on the promotional information *provided by TNA*; not the advertisements modified by either the cable systems or iN DEMAND which did not use the same words provided by TNA. Unlike *Giotis* where the product was unchanged from manufacture to use, the advertisements at Exhibit 3 of Frank Romano's deposition ***were*** changed by either iN DEMAND or the cable systems in the very manner which Plaintiff claims constitutes trademark infringement.

The advertisements Plaintiff claims were created by TNA and distributed in Wisconsin, and which contain an alleged trademarked phrase, were marked as Deposition Exhibit 3 to Frank Romano's deposition, and are contained at the end of Tab A to Plaintiff's response brief. Those ads consist of five pages and Mr. Romano unequivocally testified that TNA was not responsible for placing any one of these ads. With respect to the first ad, he indicated he did not know who was responsible for placing this ad. As for the other four advertisements in Deposition Exhibit 3, he testified that iN DEMAND placed these ads, as is clearly indicated by the notation at the bottom of each of these pages. Even more importantly, Mr. Romano testified that the program descriptions supplied by TNA to iN DEMAND for these specific ads did ***not*** contain the phrase ultimately used by iN DEMAND for these specific ads and which Plaintiff claims violates his trademark rights:

> Question: Going to the points we were just talking about with respect to Exhibit 3, am I correct, did I understand your testimony correctly that you have looked at the information that was supplied to iN DEMAND with respect to the events that are advertised in Exhibit 3?

MKE/985348.1 9
Case 2:04-cv-00192-WEC   Filed 11/05/04   Page 9 of 12   Document 47

| | |
|---|---|
| Answer: | Correct. |
| Question: | And did the information that was supplied to iN DEMAND use any of the words that Mr. Boutwell highlighted on these documents? |
| Answer: | No it did not. |
| Question: | Those choices were made by iN DEMAND? |
| Answer: | Yes. |
| Question: | And were not supplied by TNA? |
| Answer: | To the best of my knowledge no. |
| Question: | Or supplied by Trifecta [a company doing contract work for TNA]? |
| Answer: | Best of my knowledge no. |
| Mr. Boutwell: | Just to clarify, you refer to the words. Lets just make sure we're talking about the words Wrestling Superstars. |
| Mr. Donnell: | I'll clarify. |
| Question: | In pages 2, 3, 4 and 5 of Exhibit 3 the phrase World Wrestling Superstars, first letter capped, appears on each of those pages, is that correct? |
| Answer: | In here it appears. |
| Question: | In pages 2, 3, 4 and 5 of Exhibit 3? |
| Answer: | Yes. |
| Question: | Are those words that were supplied by TNA or Trifecta to iN DEMAND? |
| Answer: | No. To the best of my knowledge. |
| Question: | Have you reviewed the information that was provided? |
| Answer: | Yes I have. |
| Question: | Did it contain those words? |
| Answer: | No it did not. |

> Question: So those are words that iN DEMAND came up with?
>
> Answer: Yes.

(Romano Dep. at 65-67)

Not only does the above testimony demonstrate that TNA was not responsible for selecting the words "World Wrestling Superstars," which words were the subject of Mr. Boutwell's questions, but the testimony further demonstrates that iN DEMAND, not TNA, is in control of the content of iN DEMAND's advertising. In this case, even though TNA's materials supplied to iN DEMAND did not use the words "World Wrestling Superstars," the ad placed by iN DEMAND or its website does use those words.

At page 8 of Plaintiff's response brief, Plaintiff erroneously refers to paragraph 6 of Exhibit A to the Licensing Agreement for the proposition that this paragraph conflicts with paragraph 13 of Frank Romano's earlier affidavit indicating that "TNA does not direct or control iN DEMAND's marketing and promotional activities and iN DEMAND acts independently of those efforts." Paragraph 6 does not deal at all with marketing or promotional activities by iN DEMAND or TNA. Rather, paragraph 6 simply indicates that iN DEMAND cannot "make any modifications, deletions or cuts or alterations in or to the final version *of any program* without the prior approval of licensor." (emphasis added) This paragraph says nothing regarding the right of iN DEMAND to create its own advertising or modify materials supplied by TNA with respect to wrestling events supplied by TNA.

None of the evidence cited by Plaintiff refutes the proposition advanced previously by TNA that TNA was not responsible for the use of the words claimed to be protected by Plaintiff in the advertisements, or the placement of those advertisements by iN DEMAND. Indeed, the supplemental affidavit of Frank Romano, attached hereto as Exhibit A, removes any doubt that TNA does not exercise such control over iN DEMAND's advertising. Thus, TNA's conduct with respect

to the advertisements forming the basis for Plaintiff's complaint utterly fails to support a claim of limited personal jurisdiction over TNA in this matter.

## CONCLUSION

For the above reasons, TNA respectfully requests that this Court grant its motion to dismiss for lack of personal jurisdiction, and award TNA its attorneys' fees and costs incurred in bringing this motion.

Dated: November 5, 2004                                    Respectfully submitted,

By:   s/ Douglas A. Donnell
    Douglas A. Donnell (P33187)
    Jennifer A. Puplava (P58949)
    MIKA MEYERS BECKETT & JONES, PLC
    900 Monroe Avenue, N.W.
    Grand Rapids, MI 49503
    Telephone: 616-632-8000
    Facsimile: 616-632-8002
    E-mail: ddonnell@mmbjlaw.com
             jpuplava@mmbjlaw.com

    Daryl L. Diesing, State Bar No. 1005793
    Andrew A. Jones, State Bar No. 1023074
    WHYTE HIRSCHBOECK DUDEK S.C.
    555 East Wells Street
    Suite 1900
    Milwaukee, WI 53202
    Telephone: 414-273-2100
    Facsimile: 414-223-5000
    E-mail: ddiesing@whdlaw.com
             ajones@whdlaw.com

    Attorneys for Defendant TNA Entertainment, LLC