UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALBERT PATTERSON,
d/b/a WORLD WRESTLING ASSOCIATION,
d/b/a SUPERSTARS OF WRESTLING, INC.,
and d/b/a W.W.A. SUPERSTARS,

        Plaintiff,

v.                                                           Case No. 04-C-0192

TNA ENTERTAINMENT, LLC,

        Defendant.

---

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## I. PROCEDURAL BACKGROUND

This action for unfair competition, trade mark and service mark infringement was commenced on February 25, 2004, when the plaintiff, Albert Patterson, d/b/a World Wrestling Association, d/b/a Superstars of Wrestling, Inc. and d/b/a W.W.A. Superstars ("Patterson"), filed a complaint alleging that a litany of defendants had infringed on the following names and marks which Patterson asserts he had adopted in the arena of professional wrestling:

> World Wrestling Association; W.W.A.; World Wrestling Association Superstars; W.W.A. Superstars; Superstar Wrestling; Superstars Wrestling; Superstars of Wrestling; Superstars of Pro Wrestling; W.W.A. Superstar Wrestling; W.W.A. Superstars Wrestling; W.W.A. Superstars of Wrestling; and W.W.A. Superstars of Pro Wrestling.

On March 2, 2004, Patterson filed an amended complaint which, for all intents and purposes, contained essentially the same allegations as had been set forth in the original complaint. Patterson's amended complaint asserts that the action "arises under the laws of the United States including the

Federal Trademark Act, Section 1051 et. seq. of Title 15 of the United States Code [the Lanham Act], and the laws of the State of Wisconsin relating to unfair competition and to trade name, trade mark and service mark infringement." (Am. Compl. ¶ 1.) The amended complaint contains five counts: Counts One, Two, Three and Four assert a variety of claims predicated on trade name infringement and unfair competition pursuant to the Lanham Act. Count Five asserts a trademark infringement claim pursuant to Wisconsin state law, to wit, Wis. Stat. § 132.001 et seq.

Not long after the amended complaint was filed, Patterson commenced settlement discussions with the defendants. Those discussions bore fruit with all but one of the defendants, that one defendant being TNA Entertainment, LLC ("TNA"). On May 20, 2005, TNA filed a motion for summary judgment seeking dismissal of the plaintiff's amended complaint. TNA's motion for summary judgment is now fully briefed and is ready for resolution. For the reasons which follow, TNA's motion will be granted in part and denied in part.

## II. SUMMARY JUDGMENT STANDARDS

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)

(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson,* 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

TNA's motion for summary judgment is predicated on a rather simple proposition – the undisputed fact that neither TNA nor anyone acting on behalf of TNA has used any of the phrases, marks or trade names set forth in Paragraphs 1, 3, 15, 16, 19, 20, 21, 22, 24 and/or 25 of Patterson's amended complaint and which Patterson claims are protected under federal or state law. Indeed, as its sole basis for summary judgment TNA relies on a set of Requests for Admissions that was served on Patterson on or about February 11, 2005. Those Requests for Admissions read as follows:

> 1. **Request for Admission:** Please admit that neither TNA nor anyone acting on behalf of TNA has used any of the phrases, marks or trade names you claim are protected which are identified in paragraphs 1, 3, 15, 16, 19, 20, 21, 22, 24 and/or 25 in your First Amended Complaint.
> . . . .
>
> 2. **Request for Admission:** Admit that you have no information or evidence to establish or prove your claim that TNA knew of your claim to exclusive use of the phrases, marks and/or trade names identified in your First Amended Complaint.
> . . . .
>
> 3. **Request for Admission:** Admit that you have no evidence that any member of the public who purchased or viewed a TNA produced event believed that such event was produced, promoted or originated with or by you.

(Def.'s Mot. for Summ. J., Ex. C at pp. 5-6.)

Patterson never served any answers or objections to any of the Requests. Consequently, in accordance with Fed. R. Civ. P. 36(a), the matters set forth in the Requests were deemed admitted once thirty days had passed from the date on which the plaintiff was served with the Requests.

4

Patterson acknowledges that he never responded to the Requests. Indeed, in his brief, Patterson asserts that he "has admitted that Defendant did not use plaintiff's marks verbatim." (Pl.'s Br. at 12.) However, Patterson argues that the defendant

> did extensively use "World Wrestling Superstars" which, while not a verbatim use, is confusingly similar to plaintiff's marks SUPERSTARS OF WRESTLING, SUPERSTAR WRESTLING, WORLD WRESTLING ASSOCIATION, WWA SUPERSTARS and WORLD WRESTLING ASSOCIATION SUPERSTARS OF WRESTLING. The admission did not address confusingly similar marks but only narrowed the litigation by ruling out verbatim usage of plaintiff's marks by the defendant.

(Pl.'s Br. at 12.) In other words, Patterson argues that the marks which the defendant has used (and allegedly continues to use), to wit, "Wrestling Superstars" and "World Wrestling Superstars" are confusingly similar to the plaintiff's marks and therefore the defendant has infringed on the plaintiff's marks. Indeed, Patterson's brief includes a request to have the court treat his brief as a motion for summary judgment in his favor and, on the basis of such, enjoin TNA from "using words confusingly similar to plaintiff's marks including WORLD WRESTLING SUPERSTARS, WORLD WRESTLING and WRESTLING SUPERSTARS" and award "such further relief that the court in its discretion may deem appropriate." [1] (Pl.'s Br. at 20.)

In its reply brief TNA argues that, in the face of the plaintiff's admission that the defendant has never used the plaintiff's marks as identified in the amended complaint, the plaintiff should not now be allowed to proceed on a materially different theory of liability i.e., that the defendant used marks that were confusingly similar to the plaintiff's marks. In the defendant's view, for the plaintiff to be able to proceed on such a theory of liability would require an additional amendment of the complaint, which the plaintiff has not ever sought. More specifically, the defendant argues as

---

[1] I decline the plaintiff's invitation to treat his reply brief as a motion for summary judgment.

5

follows:

> In the months following the filing of TNA's Answer to the Amended Complaint, and while discovery was still open, plaintiff never sought to amend the Complaint a second time to allege wrongful use of phrases by TNA *different* from those alleged in the Amended Complaint. Further, as noted above, plaintiff has failed to respond to any discovery which might have at least potentially placed TNA on notice that the claim plaintiff intended to pursue was different than the one alleged in the Amended Complaint. With discovery closed, and no request by plaintiff to further amend the Complaint, and in light of admissions from plaintiff regarding the untruthfulness of numerous key allegations in the Amended Complaint, TNA is entitled to summary judgment.

(Def.'s Reply at 5.)

There is no question that, by Patterson's having failed to respond to TNA's Requests for Admissions, he is deemed to have admitted each of the three Requests. Accordingly, it is undisputed that: (1) neither TNA nor anyone acting on behalf of TNA has used any of the phrases, marks or trade names the plaintiff claims are protected and which are identified in paragraphs 1, 3, 15, 16, 19, 20, 21, 22, 24 and/or 25 in the First Amended Complaint; (2) the plaintiff has no information or evidence to establish or prove his claim that TNA knew of his claim to exclusive use of the phrases, marks and/or trade names identified in the First Amended Complaint; and (3) the plaintiff has no evidence that any member of the public who purchased or viewed a TNA produced event believed that such event was produced, promoted or originated with or by the plaintiff.

However, if the plaintiff's amended complaint can be construed to assert that the defendant used a mark or name that was confusingly similar to a mark or name belonging to the plaintiff (as opposed to using the identical mark or name), then the admission made by the plaintiff in response to TNA's first Request for Admission is not dispositive. Instead, it merely narrows the issue in the case.

Paragraph 20 of the amended complaint (which is contained in Count One and which is

6

thereafter realleged in each of the other four counts of the amended complaint) reads as follows:

> Attached as plaintiff's <u>Exhibits A through E</u> and <u>K through M</u> to the original complaint are examples of plaintiff's advertising and promotional activities in conjunction with service marks WORLD WRESTLING ASSOCIATION, W.W.A., WORLD WRESTLING ASSOCIATION SUPERSTARS, W.W.A. SUPERSTARS, SUPERSTAR WRESTLING, SUPERSTARS WRESTLING, SUPERSTARS OF WRESTLING, SUPERSTARS OF PRO WRESTLING, W.W.A. SUPERSTAR WRESTLING, W.W.A. SUPERSTARS WRESTLING, W.W.A. SUPERSTARS OF WRESTLING, and W.W.A. SUPERSTARS OF PRO WRESTLING. Plaintiff's <u>Exhibit J</u> contains examples of defendants' use of the marks.

(Am. Comp. ¶ 20.) In turn, Exhibits J-47, J-48, J-49, and J-50 appear to be advertisements for TNA ("Total Nonstop Action") television events on June 4, 11, 18, and 25, 2003. The "Synopsis" of each of the advertisements reads as follows:

> PPV Wrestling will never be the same, as the National Wrestling Alliance continues "TNA: Total Nonstop Action" Wednesdays in June. Featuring **World Wrestling Superstars** and the lovely TNA Girls, all the hottest action is on iN DEMAND! Catch all your favorite wrestling superstars LIVE on iN DEMAND on Wednesday, June 4, 11, 18 and 25 at 8:00 pm EST.

(Am. Comp., Ex. J-47 (emphasis added).)

Finally, paragraph 1 of the amended complaint's "Prayer for Relief" reads as follows:

> That each defendant, and where the defendants are entities, their officers, agents, servants, employees, attorneys and all those persons in active concert or participation with it, be enjoined from indirectly or indirectly [sic] from using the words WORLD WRESTLING ASSOCIATION, W.W.A., WORLD WRESTLING ASSOCIATION SUPERSTARS, W.W.A. SUPERSTARS, SUPERSTAR WRESTLING, SUPERSTARS WRESTLING, SUPERSTARS OF WRESTLING, SUPERSTARS OF PRO WRESTLING, W.W.A. SUPERSTAR WRESTLING, W.W.A. SUPERSTARS WRESTLING, W.W.A. SUPERSTARS OF WRESTLING, and W.W.A. SUPERSTARS OF PRO WRESTLING SUPERSTAR WRESTLING [sic]or **any other mark, word or name similar to any of plaintiff's marks which is likely to cause confusion** and continuing any and all acts of unfair competition as herein alleged.

(Am. Comp. at p. 14, ¶ 1 (emphasis added).)

In light of the foregoing, it is reasonable to construe the amended complaint as having alleged

7

that, while TNA may have not used the plaintiff's marks in "verbatim" fashion, TNA did use a mark ("World Wrestling Superstars") that was confusingly similar to one or more of the plaintiff's marks. Consequently, that the plaintiff has admitted that neither TNA nor anyone acting on behalf of TNA has used any of the phrases, marks or trade names the plaintiff claims are protected and which are identified in paragraphs 1, 3, 15, 16, 19, 20, 21, 22, 24 and/or 25 in the First Amended Complaint is not sufficient reason to award summary judgment to TNA and dismiss the amended complaint and this action in their entirety. That is not to say, however, that TNA is not otherwise entitled to at least partial summary judgment.

"The Lanham Act protects registered marks from interference by state legislation, prevents unfair competition, and protects against fraud 'by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks.'" *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (citing 15 U.S.C. § 1127). To prevail on a trademark infringement and unfair competition claim under the Lanham Act, "a plaintiff must establish that (1) [his] mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Id*. at 638 & n.8. In the trademark context, consumer confusion concerns the "tendency of the mark to indicate the origin of the product in the eyes of the purchasing public." *Sullivan v. CBS Corp.*, 385 F.3d 772, 777 (7th Cir. 2004).

In assessing the likelihood of confusion, courts have identified seven relevant factors that help in deciding the ultimate question: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use or promotion of the products; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the defendant's intent (or lack thereof) to palm

off its product as those of the plaintiff. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461-62 (7th Cir. 2000); *Sullivan*, 385 F.3d at 777. "[A]lthough no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations." *Eli Lilly*, 233 F. 3d at 462.

In a Lanham Act case seeking only injunctive relief, a plaintiff need not prove actual confusion. *Bishops Bay Founders Group, Inc. v. Bishops Bay Apartments, LLC*, 301 F. Supp.2d 901, 913 (W.D. Wis. 2003). However, in a Lanham Act case where the plaintiff is seeking money damages, a plaintiff must prove actual confusion. *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-05 (7th Cir. 1990). In *Web Printing* the court was quite clear in distinguishing between a violation of the Lanham Act and the remedies available to a plaintiff successfully prosecuting a Lanham Act claim.

> The inquiries should be kept separate because a violation of the Lanham Act can be remedied in more ways than one. The usual way . . . is by an award of damages. A plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's Lanham Act violation, that the violation caused actual confusion among consumers of the plaintiff's product, and as a result, that the plaintiff suffered actual injury, i.e., a loss of sales, profits, or present value (goodwill). WPC did not prove the elements essential to a recovery of damages, of course, so to it that avenue of relief is foreclosed. Other avenues of relief, however, are not foreclosed. In the past, courts have fashioned wide-ranging relief for a violation of the Lanham Act, allowing remedies such as a recovery of defendant's profits, an award of costs of the action, and, in some exceptional cases, as award of attorney's fees. These remedies flow not from the plaintiff's proof of its injury or damage, but from its proof of the defendant's unjust enrichment or the need for deterrence, for example, or, in the case of costs, merely from its proof of the defendant's Lanham Act violation. To collapse the two inquiries of violation and remedy into one which asks only of the plaintiff's injury, as did the district court, is to read out of the Lanham Act the remedies that do not rely on proof of "injury caused by actual confusion." And this, of course, is improper.

*Id*. (citations and footnote omitted); *see also Eli Lilly*, 233 F.3d at 465 ("[E]vidence of actual confusion is not essential to a finding of likelihood of confusion.")

9

In the case at bar, the plaintiff is seeking both injunctive relief and damages. This is evident from the "Prayer for Relief" set forth in the amended complaint. In paragraph 1, as quoted above, the plaintiff is seeking injunctive relief. Paragraph 2, however, reads as follows:

> That each defendant be required to account to plaintiff for any and all profits derived by defendants from the sale of its entertainment services, royalties from the sale of goods and services bearing the mark under license from the defendants, and for all damages sustained by plaintiff by reason of said acts of infringement and unfair competition complained of herein.

(Am. Comp. at pp. 14-15, ¶ 2.)

In light of the court's holding in *Web Printing*, Patterson must prove actual confusion if he seeks to recover damages (assuming of course that he can prove a violation of the Lanham Act in the first instance). However, based upon his failure to respond to Request for Admission number 3, he has admitted that he has no evidence that any member of the public who purchased or viewed a TNA produced event believed that such event was produced, promoted or originated with or by the plaintiff. In other words, he has admitted that he has no evidence of actual confusion. Such being the case, he cannot recover damages for any Lanham Act claim that he might be able to prove against TNA.

Whether Patterson will be successful in persuading the finder of fact that TNA committed any violation of the Lanham Act or Wisconsin state law remains to be seen. Indeed, in its brief in support of its motion TNA is quick to point out that, in the event the case proceeds beyond the summary judgment stage, it is not conceding that Patterson is even entitled to protection for the marks and names at issue. Nevertheless, for the reasons set forth above, the defendant's motion for summary judgment will be denied, at least to the extent that the defendant seeks dismissal of the plaintiff's amended complaint and this action in their entirety. However, the defendant's motion will

10

be granted in part; more precisely, the plaintiff will be prohibited from pursuing money damages from the defendant for any Lanham Act violation which he is ultimately able to prove against TNA.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that, to the extent the defendant's motion seeks dismissal of the amended complaint and this action in their entirety, the motion be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff be and hereby is prohibited from pursuing money damages from the defendant for any Lanham Act claim which he is ultimately able to prove against TNA, and thus in that respect, the defendant's motion be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that on Thursday, September 8, 2005 at 9:00 a.m., in Room 253 of the United States Courthouse, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, a scheduling conference will be conducted to discuss with the parties the further processing of this case to final resolution.

**SO ORDERED** this 26th day of August 2005, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

11