# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ALBERT PATTERSON,
d/b/a WORLD WRESTLING ASSOCIATION,
d/b/a SUPERSTARS OF WRESTLING, INC.,
and d/b/a W.W.A. SUPERSTARS,

        Plaintiff,

       v.                        Case No. 04-C-0192

TNA ENTERTAINMENT, LLC,

        Defendant.

---

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT, TO RESCIND SETTLEMENT AGREEMENT, TO VACATE INJUNCTION, TO REINSTATE ACTION, AND FOR SANCTIONS**

---

## I. BACKGROUND

On August 26, 2005, this court issued a decision and order in this action, granting in part and denying in part the defendant's ("TNA") motion for summary judgment. In that same decision the court advised the parties that a scheduling conference to discuss the further processing of the action would be conducted on September 8, 2005. That scheduling conference was cancelled on September 7, 2005, based upon the court's receipt of a letter from one of the defendant's lawyers advising that the parties had "agreed in principle" to settle the action and that the parties anticipated being able to submit a formal stipulation and order for dismissal of the action within the next 30 days. Not too long after his September 7, 2005, letter, that same lawyer wrote another letter to the court, this being on October 12, 2005, in which he asserted the following:

As this Court will recall, the parties reported to the Court on or about September 7,

2005, that they had agreed in principle to resolve this matter. Unfortunately, I have now been informed that the tentative settlement initially reached by the parties has failed and that the parties are now unable to resolve their differences. Under these circumstances, TNA respectfully submits that a settlement conference or mediation, either before this Court or one of the other magistrate judges, would be appropriate and helpful. In the alternative, TNA expects that this Court will wish to reset this matter for a status conference to discuss further scheduling in this matter.

Taking up the suggestion of counsel, a status conference was held on November 7, 2005. Upon being satisfied that both parties did indeed wish to participate in mediation, this court referred the case to Magistrate Judge Aaron Goodstein for such mediation. Judge Goodstein scheduled the mediation for December 16, 2005. The mediation went forward on December 16 and resulted in the parties' agreeing to settle the case. Indeed, on that same day, counsel for the parties presented to this court an agreed-upon injunction and an agreed-upon order for dismissal, both of which the court signed on December 16, 2005. Judgment was entered by the Clerk of Court on December 19, 2005.

On January 19, 2006, the defendant filed a "Motion for Relief from Judgment, to Rescind Settlement Agreement, Vacate Injunction, Reinstate Action and for Sanctions." The defendant's motion also sought leave to file the motion and the accompanying submissions under seal. On January 30, 2006, the plaintiff ("Patterson") filed his brief (with accompanying submissions) in opposition to the motion. On February 6, 2006, TNA filed its reply. Thus, the defendant's motion is fully briefed and is ready for resolution. For the reasons which follow, the defendant's motion will be granted in part and denied in part.

## II. DISCUSSION

Simply stated, TNA claims that during the course of the mediation Patterson made certain factual assertions; that TNA relied on the truthfulness of such factual assertions in agreeing to the terms of the settlement, including the entry of the injunction; and that, as it now turns out, such

2

factual assertions were not true.  In other words, TNA claims that the settlement agreement was procured by fraud.  Such being the case, TNA urges this court to vacate the judgment pursuant to Fed. R. Civ. P. 60(b).

Federal Rule of Civil Procedure 60(b) provides for relief from judgments.  Though Rule 60(b) motions should be liberally construed, *Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir. 1983), relief is "an extraordinary remedy and is granted only in exceptional circumstances." *Talano v. Northwestern Med. Faculty Found., Inc.,* 273 F.3d 757, 762 (7th Cir. 2001).  Rule 60(b)(3) lists "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party" as reasons for which a court may relieve a party from a final judgment or order.  Fed. R. Civ. P. 60(b)(3).  A party seeking to vacate a judgment on the grounds that fraud and misrepresentation were used to procure the settlement upon which that judgment was based, must establish the existence of such fraud by clear and convincing evidence.  *See Ervin*, 701 F.2d at 61; *Di Vito v. Fid. & Deposit Co.*, 361 F.2d 936, 939 (7th Cir. 1966).

Recall that this action is one for unfair competition, trade name and trademark infringement.  Specifically, plaintiff Patterson alleged in his amended complaint that he had adopted the following names and marks in the arena of professional wrestling: World Wrestling Association; W.W.A. World Wrestling Association Superstars; W.W.A. Superstars; Superstar Wrestling; Superstars Wrestling; Superstars of Wrestling; Superstars of Pro Wrestling; W.W.A. Superstar Wrestling; W.W.A. Superstars Wrestling; W.W.A. Superstars of Wrestling; and W.W.A. Superstars of Pro Wrestling.  He further alleged that the defendant had infringed on his right to use those names and marks.

As stated previously, the mediation resulted in the parties jointly presenting to this court a stipulation for dismissal of the action as well as an agreed-upon injunction.  The terms of the

3

injunction are as follows:

The above-captioned parties have agreed to entry of an injunction, which the court has approved, as follows:

Defendant TNA Entertainment, LLC shall be enjoined from using any of the following phrases in its promotional or advertising materials or in connection with any events sponsored or promoted by TNA Entertainment, LLC:

WORLD WRESTLING ASSOCIATION, W.W.A. WORLD WRESTLING ASSOCIATION SUPERSTARS, W.W.A. SUPERSTARS, SUPERSTAR WRESTLING, SUPERSTARS WRESTLING, SUPERSTARS OF WRESTLING, SUPERSTARS OF PRO WRESTLING, W.W.A. SUPERSTAR WRESTLING, W.W.A. SUPERSTARS WRESTLING, W.W.A. SUPERSTARS OF WRESTLING, W.W.A. SUPERSTARS OF PRO WRESTLING, WORLD WRESTLING, WORLD WRESTLING SUPERSTARS, WRESTLING SUPERSTARS, and SUPERSTARS.

Plaintiff, his agents, employees, partners, joint venturers, members, officers, directors, distributors, licensees, advertisers, promoters, successors and assigns (hereafter collectively "Plaintiff") agree that Plaintiff shall be barred and estopped from making any claim or demand against TNA Entertainment, LLC or its agents, employees, partners, joint venturers, members, offices, directors, distributors, licensees, advertisers, promoters, successors and assigns (hereafter collectively "TNA") relating to or arising out of TNA's use of any other words or phrases not included in the above list.

The defendant claims that a serious stumbling block in the mediation arose when the plaintiff insisted that the injunction about which the parties were negotiating include the term "Superstars" within its parameters.  The defendant was unwilling to agree to the inclusion of "Superstars" in the injunction.  According to the defendant, the only reason that it ultimately agreed to include "Superstars" in the injunction was because the plaintiff represented to TNA (as well as to Judge Goodstein) that the plaintiff had already successfully prevented another competitor in another case from using the term "Superstars" either by itself or combined as "WWF Superstars."  The affidavit of Mr. Kevin Day, who is the Chief Operating Officer of TNA and who was present at the mediation,

avers as follows:

3.  After several exchanges of proposals communicated to the other side through Magistrate Judge Goodstein, it appeared that settlement discussions had reached the point of impasse by early afternoon of December 16, 2005.  At that point, all parties and their counsel met again in the courtroom with Magistrate Judge Goodstein to discuss a possible resolution of the last issue regarding use of the term "Superstars."  Both Mr. Donnell [defendant's counsel] and I stated the reasons we believed Mr. Patterson had no right to prevent TNA's use of the word "Superstars" or "TNA Superstars."  In this meeting, Mr. Patterson and his counsel stated expressly and unequivocally that Plaintiff had litigated the very issue of another party's right to use the term "Superstars" and had obtained a decision in that litigation, preventing the party's use of that term.  Plaintiff identified the litigation as a claim against Titan Sports, d/b/a World Wrestling Federation, or WWF.  Plaintiff and his counsel expressly stated that Titan Sports/WWF had been prevented from using the term "Superstars" and "WWF Superstars" as a result of Plaintiff's litigation against Titan Sports/WWF.  To support this claim that the issue had been decided in Plaintiff's favor, Plaintiff provided a document entitled "Cancellation" indicating that the mark "WWF Superstars" had been cancelled by the U.S. Patent and Trademark Office ("USPTO").  A copy of that document is attached to TNA's Brief as Exhibit 1.  The document identified "Superstars of Wrestling (WWA Superstars), Inc.," which was Mr. Patterson's company, as the plaintiff, and Titan Sports, Inc. as the defendant.

4.  During a subsequent breakout session that afternoon, I telephoned our in-house counsel in Texas and TNA's intellectual property attorney to determine if Plaintiff's representations regarding the Titan Sports litigation were accurate.  Our attorneys attempted to obtain copies of the documents in the case referenced in the Cancellation, but discovered that those documents were not maintained online, and we were unable to see the litigation documents or verify the truth of Plaintiff's statement that he had prevented Titan Sports/WWF from using the term "Superstars" or "WWF Superstars."

5.  Though TNA has denied Plaintiff's right to prevent TNA from using the word "Superstars" or "TNA Superstars," in the present lawsuit Plaintiff's representations regarding his successful litigation against Titan Sports/WWA was the primary basis upon which I concluded to settle the litigation by agreeing, on behalf of TNA Entertainment, to not use the term "Superstars" in TNA's advertising and promotional materials.  Had I known the true outcome of the litigation that Plaintiff orally represented to me, Mr. Donnell and Magistrate Judge Goodstein, I would not have agreed to a settlement that prohibited TNA from using the term "Superstars."

6.  I first discovered the true outcome of the Titan Sports/WWF litigation at the end of December, 2005.  After waiting for a response to our request for documents from

5

the USPTO, we obtained key documents that show Mr. Patterson's company lost its claim that Titan Sports/WWF was not allowed to use the term "Superstars." I now understand that both a prior federal court order in 1993 and a ruling by the Trademark Trial and Appeal Board in 1999 held that Titan Sports/WWF *was* entitled to use the word "Superstars," but was not allowed to use the other protected marks of Plaintiff. See Exhibits 2 and 3 attached to TNA's Brief. I also discovered after the December 16, 2005 settlement conference that Mr. Patterson's own attorney had advised him that Titan Sports/WWF was allowed to use "Superstars" as a result of the 1993 district court decision. See Exhibit 3 to TNA's Brief.

7. I clearly recall Plaintiff's representations at the settlement conference regarding the Titan Sports litigation, and those representations were completely opposite from the holdings as shown in the exhibits to TNA's Brief. I relied on Plaintiff's misrepresentations in deciding to settle with an agreement prohibiting TNA's use of the word "Superstars."

(Def.'s Br., Ex 5 (Day Aff.) at ¶¶ 3-7.)

Interestingly, in the affidavit which accompanied his response Patterson does not deny that

he made the statement attributed to him by the defendant. Instead, he avers that

[a]t the time of the settlement conference prior to reaching an agreement, I did not make any statements directly to the representatives of the defendant. All statements made [b]y me were to Magistrate Judge Goodstein in the presence of my counsel, Charles Drake Boutwell. During the settlement conference, I did not make any statement which I knew to be false and did not present any document to Magistrate Judge Goodstein which I knew to be false.

(Pl.'s Br., Ex. 3 (Patterson Aff.) at ¶ 6.) More substantively, as to the rationale behind Patterson's

making the statements which are now relied upon by the defendant as the predicate for its fraud

claim, Patterson avers as follows:

4. In preparing Fact 2 in Response to Defendant's Motion for Summary Judgment, I interpreted the documents in Exhibit 4 to mean that I was the petitioner referred to in the finding of Lynne Beresford made on December 31, 2002 since I was the petitioner in an opposition to the trademark WWF SUPERSTARS. Moreover, I understood that the notation TERMINATED dated March 30, 2000 referred to a termination of the mark. Based on my interpretation of the documents in Exhibit 4, I understood at the time of the settlement conference on December 16, 2005 that I had won my opposition to the trademark WWF SUPERSTARS since I understood the

6

mark has been terminated  March 30, 2000, since I understood that the mark has been
cancelled on February 18, 2003, and since I understood that I was the petitioner
referred to in the finding of Lynne Beresford on December 31, 2002.  I was personally
involved in the opposition to the mark WWF SUPERSTARS and was the petitioner
in that opposition.  I personally made all of the representations to Magistrate Judge
Goodstein regarding the interpretations of the documents in Exhibit 4 as stated in
Fact 2.

(Patterson Aff. ¶ 4.)

"Fact 2," which Patterson refers to is Patterson's second proposed finding of fact submitted

in this court along with his response to TNA's motion for summary judgment.  Patterson's second

proposed finding of fact states:

On March 30, 2000 World Wrestling Federation Entertainment, Inc.'s registration of
the mark WWF SUPERSTARS . . . registration number 1,819,240 was cancelled on
the petition of Albert Patterson with the finding of Lynne G. Beresford, Deputy
Commissioner for Trademark Policy in relevant part that,

"Whereas it appears from the records of this office that the petitioner
*(Patterson)* is the owner of trademark registration 1819240 and has
complied with the provisions of Section 7(e) of the Trademark Act of
1946 and the Examiner of Trademarks has recommended the
cancellation thereof.

(Pl.'s Resp., Ex. A (emphasis in original) (for convenience, the citations are to Patterson's brief on

the present motion and not to the original summary judgment documents).)  However, the actual

document referred to by Patterson in Fact 2 does not contain Patterson's name.  Instead, the original

document concerning the mark "WWF SUPERSTARS" and signed by Deputy Commissioner

Beresford reads:

Ex Parte Titan Sports, Inc.

Whereas Titan Sports, Inc.

has surrendered Trademark Registration No. 1819240 for cancellation and

7

> Whereas it appears from the records of this office that petitioner is the owner of Trademark Registration No. 1819240 and has complied with the provisions of Section 7(e) of the Trademark Act of 1946, and the Examiner of Trademarks has recommended the cancellation thereof;
>
> now, therefore, Registration No. 1819240 is hereby cancelled.

(Pl.'s Resp., Ex. A.)

As is clear from the actual document, trademark registration No. 1819240 was not cancelled upon Patterson's petition, but rather was cancelled upon the petition of Titan Sports, Inc., the owner of the mark and parent company of World Wrestling Federation Entertainment, Inc. Furthermore, TNA has submitted documents from an earlier case in the Eastern District of Wisconsin in which Titan Sports, Inc. was the defendant and Louis Jones, Trustee, and World Wrestling Association, successor to United Wrestling Association d/b/a/ U.W.A. Superstar Wrestling were the plaintiffs. In that case United States District Judge Thomas J. Curran entered an order enjoining Titan Sports, Inc. from using certain names in connection with wrestling activities, but specifically stated that "[t]his judgment does not preclude any party from using the term 'Superstars.'" (Def.'s Br., Ex. 3.) Indeed, Patterson's petition in the Trademark office to cancel Titan Sports' "WWF SUPERSTARS" mark was later dismissed based in part on Judge Curran's ruling. (Def.'s Br., Ex. 2.)

What is clear from all of this, and indeed does not appear to be disputed at this point by Patterson, is that Titan Sports, Inc. was not prevented from using the terms "Superstars" and "WWF Superstars" as the result of litigation by Patterson. Patterson's representations to the contrary, during mediation and in his second proposed finding of fact, were therefore false (or, perhaps to use a less volatile word, inaccurate).

Falsity alone, however, does not establish fraud. In order to establish that the settlement was

procured by fraud, TNA would have to show by clear and convincing evidence: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth and (8) his right to rely thereon. *Clarion Corp. v. American Home Products Corp.*, 494 F.2d 860, 865 (7th Cir. 1974). In the case at hand, doing so would be difficult. First of all, Patterson is a layman. It is not obvious that he knew that his representations regarding the outcome of previous litigation were false. It may be that Patterson knew that he won a case against Titan Sports, but did not remember exactly what the injunction provided for, and did not understand the intricacies of proceedings before the Trademark Office. Furthermore, the alteration in the quotation in Patterson's proposed finding of facts might have been the result of Patterson's attorney trying to clarify something that he was himself mistaken about. And finally, it is not clear that TNA had a right to rely on Patterson's lay representations regarding the outcome of previous litigation. That is to say, it is not clear that TNA's reliance on Patterson's representations was reasonable.

It is unnecessary to delve into these factual inquiries, however, because I am convinced, in any event, that the judgment should be set aside. Rule 60(b) provides several circumstances, other than fraud, that justify setting aside a judgment. A judgment may be set aside because of "mistake, inadvertence, surprise, or excusable neglect," or more generally, for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(1) and (6). The district courts have broad discretion in deciding whether to grant relief under Rule 60(b). *Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat.*, 902 F.2d 1275, 1277 (7th Cir. 1990) ("Relief from judgment under Rule 60(b) may be granted at the broad discretion of the trial judge, and the court's

determination may only be reversed upon an abuse of that discretion." (citation omitted)).

Setting aside the judgment in the present action is justified on multiple grounds. First, although fraud requires intentional conduct, Rule 60(b)(3) also covers "misrepresentation," and courts have held that this "applies to both intentional and unintentional misrepresentations." *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). Moreover, if Patterson did not intentionally misrepresent the outcome of earlier litigation, then he was mistaken about it, and because of Patterson's representations, TNA shared in the mistake. Mutual mistake of material fact can be the basis for setting aside a settlement and judgment under Rule 60(b)(1). *See Brown v. County of Genesee*, 872 F. 2d 169, 174 (6th Cir. 1989). Here, I have little difficulty finding that the parties' mistake was material to TNA's entering into the settlement agreement. Indeed, it appears that it was the main motivating factor.

In the end, in my opinion there are ample reasons justifying relief from the operation of the judgment entered in this case. Whether it was intentional or not, Patterson misrepresented information that was crucial to TNA's decision to allow an injunction prohibiting it from using the word "superstars" to be entered against it. TNA assures the court that using that word is an important part of its advertising and promotional efforts, and the court has no reason to doubt such claim. In my view, it would not serve the interests of justice to allow that injunction to stand when it was clearly the product of Patterson's misrepresentation and the parties' mutual mistake concerning the outcome of the previous litigation.

For all of the forgoing reasons, TNA's motion to set aside this court's injunction, order of dismissal, and judgment will be granted. TNA's motion for sanctions in the form of attorney's fees and costs will, however, be denied. While Patterson's misrepresentations could and should have

been avoided by him, it is not as if the matter was totally out of TNA's control. Going into the mediation, one of the main points of contention between the parties was the use of the word "superstars." Moreover, TNA was on notice through the materials that Patterson had previously filed along with his response to TNA's summary judgment motion that Patterson claimed to have won litigation concerning the use of similar words by Titan Sports, Inc. Perhaps had TNA looked more deeply into the matter prior to the mediation, Patterson's misrepresentations at the mediation would have been rendered benign.

   **NOW THEREFORE IT IS ORDERED** that this court's injunction and order of dismissal entered on December 16, 2005 as well as the judgment entered on December 19, 2005 be and hereby are **VACATED**;

   **IT IS FURTHER ORDERED** that the defendant's motion for sanctions be and hereby is **DENIED**;

   **IT IS FURTHER ORDERED** that a scheduling conference will be conducted on Tuesday, March 21, 2006 at 9:00 a.m. in Room 253 of the U.S. Courthouse, 517 E. Wisconsin Avenue, Milwaukee, WI 53202.

   **SO ORDERED** this 10th day of March, 2006, at Milwaukee, Wisconsin.


                         /s/ William E. Callahan, Jr.
                         WILLIAM E. CALLAHAN, JR.
                         United States Magistrate Judge

11