| | |
|---|---|
| ALBERT PATTERSON, d/b/a WORLD WRESTLING ASSOCIATION, d/b/a SUPERSTARS OF WRESTLING, INC. and d/b/a W.W.A. SUPERSTARS,<br><br>           Plaintiff,<br>vs.<br><br>TVN ENTERTAINMENT, LLC,<br><br>           Defendant. | Case No. 04-C-0192<br><br>Magistrate Judge<br>William E. Callahan |

### TNA ENTERTAINMENT LLC'S PROPOSED FINDINGS OF FACT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant TNA Entertainment, LLC, by and through its attorneys, Mika Meyers Beckett and Jones, PLC, hereby submits its Proposed Findings of Fact in Support of its Motion for Summary Judgment:

1. TNA is an entertainment company which produces and promotes live wrestling events and markets recordings of those events on TV and DVDs nationwide and internationally. (Barton Affidavit, Exhibit A to TNA's Brief in Support of Motion for Summary Judgment).

2. TNA was formed in 2002 and first began promoting its wrestling events in mid- to late 2002. *Id.*

3. TNA produces and distributes DVDs of TNA wrestling events through a licensee (Navarre Home Entertainment). (Barton Dep., pp. 8-11).

4. TNA's wrestling events are also broadcasted via the Internet by MediaZone pursuant to a license agreement. (Barton Dep., p. 12).

5. TNA's programs were also telecast via pay-per-view by iN Demand and its affiliates. (Barton Dep., pp. 22-23).

6. Marvel produced and sold action figures of TNA wrestlers pursuant to a license agreement with TNA. (Barton Dep., p. 31).

7. Liquid Blue designed, produced, and distributed T-shirts. (Barton Dep., p. 32).

8. TNA's programs are advertised by approximately 2,000 local cable systems across the country, and those cable systems create their own advertisements for the programs. (Barton Dep., p. 87).

9. TNA creates and provides advertisements and information that is acceptable to TNA, but local cable affiliates in many instances create their own advertisements and make changes to the content provided by TNA. (Barton Dep., pp. 90-91, 98-99).

10. Albert Patterson claims to be doing business under a variety of names, including World Wrestling Association, World Wrestling Association Superstars of Wrestling, and W.W.A. Superstars. (Amended Complaint).

11. Patterson's business has not filed a corporate tax return since 1993 and he has not filed an individual tax return since sometime in the 1980s. (Patterson Dep., pp. 16-19).

12. Patterson has had zero net income from use of his claimed marks since at least 1993 (Patterson Dep., pp. 22-23, 60, 152-154), and his former company, King Kong Enterprises, did not generate positive net income from the claimed marks 1987 to 1993. (Patterson Dep., pp. 46-47).

13. In this action, Mr. Patterson claims that the following names, marks, phrases and terms are his protected property:

> "WORLD WRESTLING ASSOCIATION, W.W.A., WORLD WRESTLING ASSOCIATION SUPERSTARS, W.W.A SUPERSTARS, SUPERSTAR WRESTLING, SUPERSTARS WRESTLING, SUPERSTARS OF WRESTLING, SUPERSTARS OF PRO WRESTLING, W.W.A. SUPERSTAR WRESTLING, W.W.A. SUPERSTARS WRESTLING, W.W.A. SUPERSTARS OF WRESTLING, AND W.W.A SUPERSTARS OF PRO WRESTLING." (Plaintiff's Response to Defendant TNA

Entertainment LLC's Interrogatories and Requests for Production of Documents to Plaintiff, ¶ 1).

14. The above phrases are the same 12 phrases listed in Plaintiff's Amended Complaint that this Court previously held Patterson had admitted were **not** used by Defendant. (August 26, 2005 Decision and Order, p. 6).

15. In his deposition, Patterson also claimed that TNA is prohibited from using the word "superstars" in any context connected with wrestling, and that Patterson is the only person in the wrestling entertainment business allowed to use the phrase "superstars" except for individuals or entities to whom he has granted a license. (Patterson Dep., pp. 72-73, 75, 81, 95).

16. Of the above marks Patterson claims he "owns," only the following marks are registered with the United States Patent and Trademark Office: WORLD WRESTLING ASSOCIATION (Reg. No. 3051928) (In Class 35 for "promoting wrestling competitions of others" and Class 41 for "entertainment services in the nature of wrestling matches; wrestling videotape production; and entertainment services in the nature of ongoing television programs featuring wrestling"), and SUPERSTARS OF WRESTLING SW picture mark containing the words "superstars of wrestling sw" (Reg. No. 1857015) (In Class 41 for "entertainment services in the nature of television programs featuring wrestling). (Patterson Dep. Ex. 8, 9; attached as Exhibit B to TNA Entertainment's Brief).

17. Plaintiff has obtained state registrations for the marks: WORLD WRESTLING ASSOCIATION; U.W.A. SUPER STAR WRESTLING; and WWA SUPER STARS OF PRO WRESTLING. (Patterson Dep. Ex. 7) (attached as Exhibit C to TNA Entertainment's Brief).

18. Although Plaintiff in this litigation has produced copies of many advertisements for TNA sponsored events, Plaintiff has failed to produce a single advertisement created by or for TNA using any of Plaintiff' registered marks.

3

19. Prior to 1993, Patterson had recorded a number of wrestling events which were televised on Wisconsin area television stations, but the last of these televised wrestling events occurred in 1993, when Patterson incurred nearly $30,000 in expenses to produce the event, but realized only $1,200 in revenues. (Patterson Dep. pp. 134, 183).

20. Since 1993, Patterson has not televised any wrestling events, and has personally utilized his claimed marks only in connection with production of live wrestling events which, since 1994, have occurred only once a year in Milwaukee. (Patterson Dep. Ex. 2, pp. 12, 13; attached as Exhibit D to TNA Entertainment's Brief; Patterson Dep. pp. 157-159, 175-176, 183).

21. Patterson acknowledges that an Internet Google search for the words "wrestling superstars" returned over 2 million hits, and noted that "everyone at this point in time wants to be wrestling superstars or superstars of wrestling." (Patterson Dep., pp. 86-87).

22. In reviewing Patterson deposition Exhibit 6 (attached as Exhibit E) containing only the first 250 of the over 2 million sites using some combination of "wrestling" and "superstars," Patterson testified that he is pursuing action against only one, AWA, and has not taken action against any of the other parties listed in the deposition exhibit who are using names or phrases Patterson claims are protected. (Patterson Dep., pp. 87-95).

23. Among Patterson's various lawsuits is an action currently pending in federal court for the Eastern District of Wisconsin against the largest producer of wrestling entertainment events in the industry, World Wrestling Entertainment or "WWE." (*Patterson v. World Wrestling Entertainment, Inc., et al,* 2006 U.S. Dist. LEXIS 7453 E.D. Wis. January 31, 2006; *Patterson v. World Wrestling Entertainment, Inc., et al*, Case No. 03-C-0374).

24. Earlier this year, in the *Patterson v World Wrestling Entertainment* case, Judge Randa granted summary disposition in favor of defendant WWE in that litigation on claims

strikingly similar to the claims made by Patterson in this case. (See Decision dated January 31, 2006, attached as Exhibit F).

25. Indeed, many of the paragraphs in the *World Wrestling Entertainment* complaint are identical to paragraphs in Plaintiff's Amended Complaint in this action.

26. A number of the factual findings by the district court in its *World Wrestling Entertainment* January 31, 2006 Decision are equally applicable to the present lawsuit involving the same Plaintiff.

27. In the *World Wrestling Entertainment* case, Judge Randa dismissed Plaintiff's claim that the defendant WWE was not allowed to use the phrase "WWF Superstars" on the ground of laches and dismissed the claim that defendant's marks "World Wrestling Entertainment" and "WWE" were confusingly similar to Plaintiff's marks "World Wrestling Association" and "WWA" as a matter of law. *Id.*

28. Also relevant to Plaintiff's claim that no one but Plaintiff is allowed to use the word "superstars" in connection with wrestling entertainment are the decisions in prior lawsuits involving Patterson as a party, and reaching directly opposite conclusion.

29. In a 1993 order in the Eastern District of Wisconsin, with the consent of Patterson, Judge Curran ordered that WWE's predecessor, Titan Sports, was not permitted to use certain names, but specifically ruled that "this judgment does not preclude any party from using the term 'superstars.'" See Opinion dated January 22, 1993 attached as Exhibit G to TNA Entertainment's Brief).

30. Patterson in his deposition admitted that, as far back as 1993, he expressly agreed to allow the largest provider of wrestling entertainment in the industry to use the very word he now claims in this litigation only he is allowed to use. (Patterson Dep., pp. 57, 106-109).

5

31. Even Patterson's own attorney advised him that he did **not** have exclusive right to use of the term "superstars" in promotion of wrestling entertainment events. (See letter of Attorney Essman dated October 14, 1994 attached as Exhibit H to TNA Entertainment's Brief).

32. Apparently dissatisfied with the agreement he made with Titan Sports, Patterson subsequently challenged Titan's mark "WWF Superstars" before the Trademark Trial and Appeals Board ("TTAB"). (Patterson Dep., p. 97).

33. In ruling on Plaintiff's challenge to the mark, the TTAB ruled against Plaintiff on his claim that Titan Sports was not entitled to use the word "Superstars" or "WWF Superstars," stating at page 8 that, "Both parties, however, also acknowledge that the court [Eastern District of Wisconsin] determined that each was free to use the term SUPERSTARS." (See TTAB ruling dated August 12, 1999, attached as Exhibit I to TNA Entertainment's Brief).

34. The TTAB then went on to address Plaintiff's claim that the public would find "WWF Superstars" confusingly similar to his claimed protected marks, which are the same marks Plaintiff claims are protected in the present litigation. With regard to that argument, the Board found:

> "Under these circumstances, we then compared WWF SUPERSTARS, with "Superstars" disclaimed, and Plaintiff's pleaded marks, there is no basis for finding a likelihood of confusion among consumers. *We hold, as a matter of law, that there would be no likelihood of confusion among consumers.* (TTAB Opinion, at pp. 8, 9) (Emphasis added).

35. Patterson took no action to overturn the TTAB's decision. (Patterson Dep., p. 100).

36. Patterson claims to have entered into four license agreements authorizing use of his allegedly protected marks. (Patterson Dep., pp. 112, 113, 121-23, 125, 127, 130).

37. Patterson's agreements can be summarized as follows:

- An agreement with a Mr. Salvoldi authorizing his sale of 8 video tapes, reached as part of a settlement of litigation (Patterson Dep., pp. 114, 115, 121). Plaintiff has received no revenue at all from any such sales. (Patterson Dep., p. 114).

- An agreement with Madacy, reached as part of a settlement of a lawsuit, in which the only payment made was "basically they paid the legal fees for the lawsuits and the different stuff like that, and that's what they basically paid." (Patterson Dep., pp. 122-124)

- An agreement with Dale Gagner, reached as part of a lawsuit settlement, in which Gagner is to pay to Plaintiff 20% of sales revenues derived from Plaintiff's allegedly protected marks. (Patterson Dep., pp. 124-126). Patterson has received zero revenue from this agreement. (Patterson Dep., p. 125).

- An agreement with Resort Live, Inc., under which Plaintiff was paid $250 per show for the promotion of several shows by Resort Live, Inc. in the year 2000. (Patterson Dep., pp. 127-130). Shows that were scheduled for the year 2001 were canceled. (Patterson Dep., p. 129).

38. Other than Plaintiff's unprofitable attempts to license his claimed protected phrases, Plaintiff's only use of his marks since 1993 has been at local wrestling events, which, since 1994, have occurred only once a year according to Plaintiff's own documentation. (Patterson Dep., pp. 155, 157). (See Exhibit D to TNA Entertainment's Brief, pp. 12, 13).

39. Plaintiff's use of his marks has not generated profit from these activities, and in fact he has lost money on these endeavors. (Patterson Dep., pp. 131, 138).

40. Plaintiff does not advertise on the Internet using his marks, and has not advertised on television at least since the year 2000. (Patterson Dep., pp. 158, 159).

41. Since 2000, Plaintiff's only use of his marks has been at live local events in Wisconsin. (Patterson Dep., pp. 159, 183).

42. Indeed, since TNA began producing wrestling events in 2002, Plaintiff has produced only one local event in June 2003 in Milwaukee, Wisconsin. (Patterson Dep., pp. 175, 176).

7

43. In contrast, Defendant TNA's televised events are regularly marketed throughout the country and its DVDs are sold throughout the country. (Barton Affidavit; Barton Dep., p. 87).

44. Thus, during the entire period of TNA's corporate existence, Plaintiff has used his mark one time in a local Milwaukee event, without advertising on any of the media used to promote TNA's wrestling events.

45. This Court has already acknowledged in its Decision and Order dated August 26, 2005 that Plaintiff has admitted TNA has not used any of the 12 phrases listed in Plaintiff's Complaint, including the two phrases which Plaintiff has registered with the U.S. Patent and Trademark Office (i.e., Superstars of Wrestling SW and World Wrestling Association). (August 25, 2005 Decision and Order, p. 5).

46. Plaintiff has not identified specifically what phrases it claims Defendant has used which would be confusingly similar to Plaintiff's marks, other than the phrase "World Wrestling Superstars," as reflected in this Court's August 26, 2005 Decision and Order.

47. In an effort to get a better understanding of Plaintiff's claim, Plaintiff was provided a list of phrases in his deposition at pages 73 through 81 and was asked for each phrase whether or not TNA would be prohibited from using the phrase. When he indicated that literally every phrase specified that used the word "Superstars" was prohibited, he eventually stated his claim as follows:

> Q. . . . it is your claim that you are the only person in the wrestling entertainment business allowed to use the phrase – the word "Superstars" in conjunction with wrestling entertainment, true?
>
> A. That's my position in this litigation –
>
> Q. Okay.
>
> A. With TNA, yes. (Patterson Dep., p. 81)

8

48. TNA Entertainment has attached to its Brief examples of TNA's advertisements which were attached to Plaintiff's Amended Complaint and which Plaintiff has claimed infringe upon his marks. Viewing these ads in their entirety, as purchasers in the marketplace would, it is readily apparent that the event being promoted in an event produced and/or sponsored by TNA, whose name is prominently displayed in more than one place in the advertisement.

49. Plaintiff has yet to produce a single advertisement or promotional material for a TNA event in which TNA's name, as the producer and/or sponsor of the event is not clearly and unambiguously communicated.

50. Defendant TNA conducts its live wrestling events in Nashville or Orlando, and markets live or recorded versions of those events through cable and satellite TV media and through nationally distributed DVDs. (Barton Dep., pp. 34-35, 52).

51. TNA's television and DVD product is markedly different than the live event attended by a local audience produced by Plaintiff once a year over the last decade.

52. The "products" of Plaintiff and Defendant are markedly different.

53. Plaintiff's "marketing" through unprofitable live events have, for many years, been limited to southeast Wisconsin.

54. In the *World Wrestling Entertainment* case, Judge Randa, after discussing the evidence presented, found:

> "The sole evidence on the degree of care exercised by consumers is that wrestling and are highly knowledgeable and loyal with respect to professional wrestling programming and merchandise. Such evidence indicates that the relevant consumers are sophisticated and would be careful in choosing wrestling events and related products. In other words, they would likely be able to differentiate the parties' respective products. Patterson has not raised a genuine issue of material fact with respect to the sophistication of consumers, which weighs against the likelihood of confusion." *Patterson v. World Wrestling Entertainment, Inc. et al*, 2006 US Dist Lexis 7453 (E.D. Wis. January 31, 2006).

55. In the *World Wrestling Entertainment* case, Judge Randa found no genuine issue of material fact with respect to the sophistication of consumers in that case, and Plaintiff has presented no additional evidence in the context of this case leading to any different conclusion.

56. In the present case, Plaintiff's claimed marks are extremely weak as applied to the words and phrases used by Defendant in its advertising materials.

57. Plaintiff contends that virtually every use of the word "Superstars" in conjunction with wrestling events is confusingly similar to Plaintiff's marks. This very claim epitomizes the antithesis of distinctiveness, and rather supports the contention that the term "Superstars" as used in conjunction with wrestling events is virtually universal with utterly no distinctiveness attached to it that would suggest origin of the product or event being promoted.

58. Widespread use of a mark by third parties demonstrates weakness of the mark as set forth above, as evidenced by the overwhelming number of "hits" from the Google search "Wrestling Superstars."

59. Plaintiff himself indicated that "everyone at this point wants to be wrestling superstars or superstars of wrestling." (Patterson Dep., pp. 86-87).

60. Countless third parties are using phrases which include the word "Superstars," including phrases identical to those claimed by Plaintiff being protected in his Amended Complaint.

61. To the extent Plaintiff's "marks" ever had any distinctiveness, such quality has been diluted to the point of non-existence by the deluge of advertising in the wrestling entertainment area using the very same phrases and words.

62. Plaintiff has not proffered any evidence whatsoever of actual confusion by the consuming public with respect to any of TNA's advertisements cited by Plaintiff.

63. Plaintiff has admitted, and this Court acknowledged in its August 26, 2005 Decision and Order that, "The plaintiff has no evidence that any member of the public who purchased or viewed a TNA produced event believed that such event was produced, promoted or originated with or by the plaintiff." (Decision and Order, p. 6; see, also, Defendant's Request to Admit No. 3).

64. There is no actual confusion in the present case.

65. Even the most casual review of the advertisements of TNA events which Plaintiff claims infringe on his marks leads to the unmistakable conclusion that TNA is not "passing off" its product as having come from the Plaintiff.

66. TNA's advertisements repeatedly and conspicuously identified TNA as the promoter and producer of the event for the simple reason that TNA believes its name has substantial market value.

67. Plaintiff has yet to produce a single advertisement of a TNA event that does not plainly, conspicuously and unambiguously identify TNA as the producer/promoter of the event.

68. Use of the word "Superstars" has become so common place in this industry that it is a descriptive term, rather than a term suggesting origin of the product.

69. Virtually everyone in the wrestling industry claims its wrestlers are "superstars" as plainly evidenced by the promotional items identified in the Google search.

70. TNA adamantly denies that it ever had any intent to usurp or invade a protected mark of Plaintiff. (See Barton Affidavit attached to TNA Entertainment's Brief).

71. Even Plaintiff has admitted in connection with Defendant's Request to Admit No. 2 that "the Plaintiff has no information or evidence to establish or prove his claim that TNA knew of his claim to exclusive use of the phrases, marks, and/or trade names identified in the First Amended Complaint." (August 26, 2005 Decision and Order, p. 6).

72. TNA Entertainment's advertisements use the term "superstars" in a descriptive sense as opposed to a trademark sense. (See, e.g., Exhibit J-46 to Plaintiff's Amended Complaint, "Featuring Superstars from the National Wrestling Alliance . . ."; Exhibit J-48 to Plaintiff Complaint, "'TNA Total Non-Stop Action' Wednesdays in June. Featuring World Wrestling Superstars and the lovely TNA Girls. . ."; Plaintiff's Exhibit G-16, "If you are 18 years or older and would like to be the next TNA Wrestling Superstar, e-mail your contact information . . ."; Plaintiff's Exhibit G-20 "Go iN the ring. NWA-TNA wrestling is on pay-per-view. Catch action-packed matches, featuring some of today's World Wrestling Superstars and up-and-comers."; Plaintiff's Exhibit P-7 (DVD ad for "TNA wrestling: best of Jeff Hardy-Enigma," one of the most electrifying superstars in wrestling. . ."; Plaintiff's Exhibit P-9, "What other sacrifices will the superstars of TNA Wrestling have to make in order to survive this punishing night. . ." ).

73. Plaintiff has clearly consented to the widespread use of the phrases he now claims TNA is prohibited from using.

74. After identifying numerous users of such phrases in the Google search referenced above, Plaintiff acknowledged that he has taken no action against these users of his claimed mark. (Patterson Dep., pp. 88-96).

75. Plaintiff's use of his mark has become so sporadic and infrequent that he has effectively abandoned the mark.

76. According to Plaintiff, the last event he produced using the mark took place in June 1993 at a free admission event (Patterson Dep., p. 176), and in the context of TV productions, his last event occurred over a decade ago in 1993. (Patterson Dep., p. 183).

77.     Plaintiff's last use of the registered mark, "Superstars of Wrestling SW" in connection with "entertainment services in the nature of television programs featuring wrestling" occurred 13 years ago.

Dated:  August 11, 2006                       s/ Andrew A. Jones
                                              Andrew A. Jones
                                              WHYTE HIRSCHBOECK DUDEK S.C.
                                              555 East Wells Street, Suite 1900
                                              Milwaukee, WI  53202
                                              (414) 273-2100
                                              (414) 223-5000 Fax
                                              ajones@whdlaw.com

                                              Douglas A. Donnell
                                              Jennifer A. Puplava
                                              MIKA MEYERS BECKETT & JONES, PLC
                                              900 Monroe Avenue, N.W.
                                              Grand Rapids, MI  49503
                                              (616) 632-8000
                                              (616) 632-8002 Fax
                                              ddonnell@mmbjlaw.com

                                              Attorneys for Defendants