# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

ALBERT PATTERSON, d/b/a WORLD
WRESTLING ASSOCIATION, SUPERSTARS
OF WRESTLING, INC.,
and d/b/a W.W.A. SUPERSTARS,

        Plaintiff,

v

TNA ENTERTAINMENT, L.L.C.,

        Defendant.

_____/

Case No. 04-C-0192

MAGISTRATE JUDGE
WILLIAM E. CALLAHAN

<br>

Douglas A. Donnell (P33187)
Jennifer A. Puplava (P58949)
Mika Meyers Beckett & Jones, PLC
Attorneys for Defendant TNA Entertainment
900 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 632-8000

<br>

Charles D. Boutwell
Boutwell Law Office
Attorney for Plaintiff
3075 Plum Island Drive
Northbrook, IL 60062
(847) 272-2127

_____/

PLAINTIFF'S RESPONSE TO DEFENDANT TNA'S MOTION FOR SUMMARY
JUDGMENT

Plaintiff hereby responds to Defendant's Motion for Summary Judgment. The parties have
filed cross motions, defendant having filed a motion for summary judgment and plaintiff having filed
a motion for partial summary judgement. Moreover, this is defendant's second Motion for Summary
Judgment and the 61 Exhibits in 5 volumes filed by Plaintiff in Response to Defendant's first motion
for summary judgment are hereby incorporated by reference in this Response Brief. Additional
Exhibits to be filed with the Court will begin with Volume VI and begin with Exhibit 62

STATEMENT OF FACTS

The Court's first ruling (referred to at D Br p. 1) was without the benefit of new facts now
known to plaintiff. P Exs 63-67.[1] Subsequent to the time the requests to admit, defendant in
apparent reliance on these admissions to bind plaintiff as to defendant's future use, advertised with
slight variations from plaintiff's mark SUPERSTARS OF WRESTLING. P. Exs 64-67. The new
evidence irrefutably proves that TNA is using SUPERSTARS OF WRESTLING to advertise
defendant's televised events with knowledge of plaintiff's claims. Exs 63-67.

Patterson's principal registration for the service mark SUPERSTARS OF WRESTLING for
professional wrestling entertainment services received October 4, 1994 was renewed by the United
States Patent and Trademark Office on April 15, 2005. P. Ex 1 and 62. When Defendant
submitted its Requests to Admit to Patterson in the above styled litigation on or about February 11,
2005, he reviewed them and at the time had no information upon which he could base a denial of
those requests to admit. P. Fact 3. P. Ex 62, Patterson aff. Patterson first learned of Defendant

---

[1] Patterson filed a Motion for Partial Summary Judgment based on these new facts and
also filed a Motion for Leave to amend his Requests to Admit based on the new facts found at P
Exhibits 63-67. TNA's advertisement NWA-TNA Superstars of Wrestling was published in
Nov-Dec 2002 but Patterson did not learn of it until April 13, 2006.

2

TNA's use of advertisements using his registered trademark SUPERSTARS OF WRESTLING on or about April 13, 2006 when his attorney came across the advertisement (P Ex 63)when he was conducting research on the Internet. P. Ex 62, Patterson affidavit. Defendant's televised events were advertised using the words SUPERSTARS OF WRESTLING for events scheduled to be broadcast on November 27, December 4, December 7, December 11, and December 18, 2002. P. Fact 117. P. Exhibit 63.

Defendant's statement that "Plaintiff has failed to produce a single advertisement created by or for TNA using any of these registrations" is untrue. Plaintiff submitted interrogatories to defendant in which each of the advertisements at Exhibits 63-66 were produced to the defendant. Defendant used virtual copies of its SUPERSTARS OF WRESTLING advertisements when it began using SUPERSTARS OF TNA WRESTLING and SUPERSTARS OF PROFESSIONAL WRESTLING. Defendant's televised events were advertised using the words SUPERSTARS OF TNA WRESTLING for an event premiering Aug. 14, 2005. P Fact 118. P. Exhibit 64. Defendant's televised events were again advertised using the words"SUPERSTARS OF TNA WRESTLING" for an event that premiered Sept 11, 2005. P. Fact 119. P. EXS 65, 66. Defendant's televised events were advertised using the words SUPERSTARS OF PROFESSIONAL WRESTLING for an event premiering June 19, 2005. P. Fact 120 P. Ex 67. At no time did anyone give TNA permission to use SUPERSTARS OF WRESTLING in its advertising. P Ex 68, Campbell dep p 36, ls 13-15.

TNA entered into a contract with In Demand. P. Ex 52. Romano Dep Ex 51. TNA was the successor in interest to J. Sports & Entertainment, Inc. under this contract by and between J Sports & Entertainment, Inc and In Demand. P. Ex 52. In Demand acted as the agent of TNA pursuant to this agreement and had the responsibility to place advertisements. P Facts 9 and 14. Pursuant to its agreement with In Demand, TNA split the profits of the broadcasts with In Demand. P. Exhibit

3

67, Deposition of Thomas O'Neil.  P Facts 129-130.

TNA was served with a copy of the Complaint in this action during 2004 and had knowledge of Patterson's claims after it received a copy of the Complaint in this action.  See court record.   TNA was also served with a copy of the First Amended Complaint in this action  and had knowledge of Patterson's claims as alleged therein after it received a copy of the First Amended Complaint in this action.  See court record.

It is undisputed that Patterson has not had net income that required him to file personal income tax returns since the 1980s.  D Fact 11.  While Patterson has not had a positive net income from his business, he is apparently losing far less money than the defendant TNA which has lost money in every month of its operation.  Ex 69.  But for the tax benefits of its loss on a consolidated return for its parent Panda Energy, TNA apparently would not be required to file tax returns either.

As for TNA's alleged internet search of the words "wrestling superstars" that produced over 2 million hits, that search is not admissible evidence.  First, such an internet search produced a "hit" for every publication recorded on the internet that used either the word "wrestling" or the word "superstars".  Second, Patterson's registration is limited to professional wrestling entertainment services.  The TNA search was not limited to businesses providing professional wrestling entertainment services.

Boutwell conducted a similar internet search but used the initials TNA and WWE.  The yahoo search stated there were about 2,880,000 hits.  P. Ex 70  If the defendant's faulty logic were applied, one would conclude that TNA and WWE have appeared together about 2,880,000 times.  A search using the initials NFL and AFL generated about 4,850,000 hits.  P. Ex. 70  The point of the TNA and WWE and AFL NFL searches is to prove that the methodology used and logic applied by the TNA in its Google search is invalid and the number of hits cannot be used to

4

prove any inference regarding joint use of words or initials.

As for the allegation that Patterson has not taken action against certain wrestling entertainment enterprises referred to in Patterson's deposition, Patterson filed a Motion for a Rule to Show Cause against Dale Gagner for violation of an injunction against the use of SUPERSTARS OF WRESTLING. Exhibit 74.

. Defendant attached pages of some of the hits in its Google search  Many of these hits were advertisements for  WWF SUPERSTARS OF WRESTLING or a variation thereof occurring before 1992 and were the subject of the litigation between Patterson and Titan Sports (the WWF and WWE predecessor).   Other hits involve TNA's use which is the subject of this litigation.  Many of the "hits" are news articles,  free lance publications, or other publications by individuals or entities not the business of professional wrestling entertainment services. Patterson cannot take actions against such individuals.   The "hits" for the Classic SUPERSTARS OF WRESTLING DVDs, were pursuant to Patterson's license for the use of SUPERSTARS OF WRESTLING for these DVDs to Mario Salvoldi (Ex 40) as are the Madacy "hits" pursuant to P Exs 9 and 10.  The hits pertaining to the  Australian SUPERSTARS OF WRESTLING tour were performed pursuant to license agreement between Patterson and Resort Live, Inc.  Ex .8.  The "hits" pertaining to Dale Gagner's enterprises are being enforced concurrently.  P Ex 74.

Patterson denies that the claims against WWE are strickingly similar to the case at bar.  If a court compares two traffic accident complaints for negligence, two divorce complaints, or two forcible eviction complaints prepared by the same law firm, the complaints would be strikingly similar although the parties are different.   Once a form of complaint has a track record, lawyers often use that boiler plate in the same type of action.  This does not mean the complaints are the same.

5

All of the marks using WWF SUPERSTARS which were registered to WWE or its predecessors have been cancelled.  P Exs 4, 5.

Defendant has  mischaracterized Patterson's license agreements at Exhibits 8,  10, 40 and 41.  The agreements with Salvoldi, and  Madacy provide for a lump sum which was paid with additional royalties if royalties exceed the lump sum advance.  Sales have not caused the royalties to exceeded the lump sum advance.  Under the Resort Live contract, Patterson was paid $250.00 for each show as required by the agreement.  A motion by Patterson against Gagner for violation of the injunction and royalty payments is pending.    P. Ex 74.

Plaintiff has continuously used the mark SUPERSTARS OF WRESTLING  in live wrestling events since 1979.  P Exs 2, 11, 12, 21, 25,  27-31, 35-37, 72.    Patterson broadcast his wrestling entertainment events under the tradename SUPERSTARS OF WRESTLING on TV beginning in 1983.  P Fact 7; P Ex 2 Patterson Affidavit #7.

The first use of the marks WWA and WORLD WRESTLING ASSOCIATION on television was on June 6, 1992 when Patterson ran a wrestling entertainment television show beginning June 6, 1992 until December 1993 on  Channels 55 on Warner Cable, channel 43, Waukeshaw, WI using the marks WWA and WORLD WRESTLING ASSOCIATION.  The shows also appeared in Beloit, WI and Rockford, Illinois  metropolitan areas on Channel 49, Channel 26 in Madison and Appleton, WI on channel 26 and in Green Bay, WI on Channel.  The tradenames SUPERSTARS OF WRESTLING and WWA SUPERSTARS appeared on all of these broadcasts.  P Facts 18 22, 23.  P Exs 53-55. P Ex. 2, Patterson Affidavit # 20.  P Ex 43 DVD SUPERSTAR WRESTLING UWA SUPERSTAR WRESTLING UNITED WRESTLING, INC copyright by WWA, INC. 1992

.    As shown in the exhibits attached to the complaint, King Kong Enterprises, a company, started using the tradename WORLD WRESTLING ASSOCIATION and WWA. P Ex 2,

Patterson Affidavit #14.  This tradename had been used since 1978 in magazines published by Patterson and sold at events.  P Ex 12   Plaintiff first incorporated WORLD WRESTLING ASSOC. (W.W.A.) INC. in the State of Wisconsin on June 24, 1988.  The name of WORLD WRESTLING ASSOC, (W.W.A.) INC.  was changed to WORLD WRESTLING ASSOCIATION SUPERSTARS OF WRESTLING, INC in 1993.  P. Ex 13.    King Kong Enterprises adopted WWA Superstars of Pro Wrestling on July 19, 1989.  P Ex 14.

After Patterson's registration of SUPERSTARS OF WRESTLING, he licensed the use of the mark to Resort Live, Inc.  (P Ex 7) which used SUPERSTARS OF WRESTLING at live events in  Green Bay, WI in August 2000; Oroville, CA in August 2000; Truloc, CA in August 2000; Wollongong, Australia July 2000; Brisbane, Australis July 2000; Sydney, Australia July 2000; Perth, Australia  August 2000; Hobart, Australia August 2000; Adelaide, Australia August 2000; and Melborne, Australia August 2000. P Ex 2, Patterson Affidavit # 42.  P Exs 6, 7, 8.

Patterson also licensed the mark SUPERSTARS OF WRESTLING on a production featuring Dennis Rodman and Patterson's ownership of the mark was acknowledged at the end of the program. P Ex 42.  P Ex 7.   The show featuring Dennis Rodman was aired using Patterson's SUPERSTARS OF WRESTLING  marks throughout the United States and in 25-50 countries throughout the world beginning December 26, 2000 at 8:30 p.m.  The show was re-broadcast about 50 times throughout the United States over the next few months.   P. Ex. 2, Patterson Affidavit # 43; P Ex 6, 7 and 8. P Ex 42,  DVD of the WWA SUPERSTARS OF WRESTLING event featuring Rodman.

On April 23, 2003 Patterson entered into a license agreement with Madacy, Inc. to sell

DVDs and video tapes of wrestling entertainment using the mark SUPERSTARS OF

WRESTLING.  The merchandise licensed in this agreement was sold at Best Buy, Coconut and

other retail stores which sold DVDs and videos throughout the United States and Canada.   P Ex

2, Patterson Aff #47.  P Ex 10. P Ex 9, Trade Dress of SUPERSTARS OF WRESTLING DVDs

on sale at retail outlets.

On Sept 30, 2004 Patterson, as licensor, signed a license agreement with Mario Savoldi,

as licensee, (P Ex 40) who was responsible for the production of the following videos and DVDs:

Classic Superstars of Wrestling; Superstars of Yesteryear.
Classic Superstars of Wrestling; Kings Queens & Superstars.
Superstars of Wrestling;: Steve Austin - The Early Years.
Classic Superstars of Wrestling: Shooting Stars of Today
Classic Superstars of Wrestling; Tag Team Tempest
Classic Superstars of Wrestling; The Wild, The Weird, The Wacky and The Woman.
Classic Superstars of Wrestling; Champions of the Squared Circle
Classic Superstars of Wrestling; Booker T. - The Early Years.
Classic Superstars of Wrestling; 8 DVD Set.

Pursuant to the license agreement with Salvoldi, the SUPERSTARS OF WRESTLING

DVDs were marketed on the internet on Amazon.com and E-bay throughout the United States

and Canada and sold at live wrestling entertainment events.  P Exs 39, 40. P Fact 61.

DEFENDANT'S USE OF CONFUSINGLY SIMILAR MARKS

P Exhibit 54[2] is a video tape of an advertisement run countless numbers of times in

Wisconsin and throughout the United States by DirecTV for TNA's weekly wrestling events

which are the subject of this litigation.  As provided in Exhibit C to the License agreement, it was

TNA's responsibility to deliver 30 second advertisement spots for the programs to In Demand

---

[2]        Romano admits that Ex 3 to his deposition (P Ex 54)  is a television spot ad for
the TNA program.   P Ex 51, Romano dep p 30 lines 6-9; Dep Ex 3.

which in turn distributed the spots to DirecTV.  In the advertisement at P Ex 54, WORLD

WRESTLING SUPERSTARS is announced as presenting the TNA events.    P Ex 51, Romano

dep P Ex 3 (P Ex 54).   Romano testified that the advertisement was by defendant TNA:

> Q But this is an ad for the TNA program, correct?

> A Yes.

> This is a program telecast by TNA.  P Ex 51, Romano dep p P 30.

This advertisement spot was to promote a broadcast in Wisconsin on Wednesday night

from 8-10  for 52 weeks on a pay per view basis.   P Fact 96.   Romano testified that in addition

to the regular Wednesday night broadcast, the programs were rebroadcast an undisclosed number

of times in the discretion of IN Demand.  P Ex 51, Romano dep p 21 lines 13-25.    All

broadcasts and re-broadcasts were throughout the entire United States.  P Ex 51, Romano dep P

22 lines 8-10.

Defendant also advertised through the web site of defendant's agent,  IN Demand  using

"World Wrestling Superstars" on the IN Demand website.  P Ex 49.  P Fact 97.

 The license agreement between In Demand and TNA (P Ex 52) provided that IN

Demand (Licensee) would be the agent of TNA (Licensor) stating in relevant part as follows:

> 1.  Program: "Program" shall mean each of the following programs: a series of fifty-two
> (52) weekly wrestling events over a one year period entitled "NWA Weekly Wrestling
> Series: TNA (Total Non-stop Action)." In Demand's role was to get the  TNA program
> entitled  "NWA Weekly Wrestling Series: TNA (Total Non-stop Action on Pay Per
> View).              * * *

> Licensor **shall** deliver, at no cost to Licensee, the following advertising and
> promotional materials with respect to each version of each Program:

> (i) **Camera ready customizable ad slicks in various sizes**;

(ii) Camera-ready logo artwork for program guides and billstuffers;
(iii) 35 mm color slides and black and white 8x10 stills'
(iv) Press kits including biographies of the performers, copylines, storylines, telemarketing scripts and on hold message;
 (v) **at least one new 30 second video spot** delivered each month during the Term hereof; and
(vi) radio spots, posters and premium items.  (emphasis supplied)

* * *

With respect to advertising, the License Agreement (P Ex B) provides at 5 (a)(i):


With respect to each Program, in connection with the rights granted to Licensee pursuant to Section 2 hereof, **Licensor shall deliver to Licensee**, not later than the Delivery Date therefor or as otherwise set forth on Exhibit C hereto, at no cost to Licensee, **the advertising and publicity material for such Program set forth on Exhibit C hereto**, together with all other advertising and promotional material requested by Licensee.   No advertising material delivered by or on behalf of Licensor with respect to a Program shall include and/or contain any reference to any program other than such Program, or any reference to the name and/or logo of Licensor or  any  party, without the prior written consent of Licensee.  (emphasis supplied)

* * *

Part 6 of the License Agreement (P Ex 52) provides in relevant part:

Licensor shall consult with Licensee regarding the content and preparation of the final version of each program.  Licensee shall not make any modifications, deletions, cuts or alterations in or to the final version of any Program without the prior approval of Licensor


The Amended License Agreement at paragraph 2 creates an exclusive agency relationship

between TNA, as Licensor, and In Demand, as Licensee.  Paragraph 2 provides in relevant part:

2. (a)(i).  Licensor hereby grants to Licensee , with respect to each program, the exclusive rights and license under copyright to: (A) **act as Licensor's exclusive sales agent with respect to the Exhibition of such Program throughout the Territory** during the License Period therefor by means of Non-Standard Television on a Pay-Per View Basis, without limitation as to such Exhibition of such Program thereof, and (B) negotiate and enter into agreements with respect to such Exhibition of such Program (in Licensee's own name and/or on behalf of Licensor).  (emphasis supplied)

10

\* \* \*

   12.  Territory: The United States of America and its commonwealths, territories and possession (including without limitation, the U.S. Virgin Islands, Puerto Rico, Guam and Saipan), Canada, the Bahamas, Jamaica, the Cayman Islands, Curacao, the Netherlands Antilles (including, without limitation, St. Martin), and the West Indies.

The License Agreement is the only agreement between TNA and In Demand.  P Ex 51,

Romano dep 19, lines 15-25.   The license agreement cannot be amended except in writing. P Ex

52, paragraph 11(i).

ARGUMENT

**PATTERSON RIGHT TO THE  *SUPERSTARS OF WRESTLING* IS INCONTESTIBLE**

Patterson has held a principal registration for the tradename SUPERSTARS OF

WRESTLING since October 14, 1994. P. Exs 1 and 2.   Patterson's right to use that tradename

has become incontestible.  15 U.S.C.S 1065 provides: ."....the right of the registrant to use such

registered mark in commerce for the goods or services on or in connection with which such

registered mark has been in continuous use for five consecutive years subsequent to the date of

the registration and is still in use in commerce shall be incontestible:..".

DEFENDANT TNA KNOWINGLY USED PATTERSON'S MARK SUPERSTARS OF<br>WRESTLING

A Principal Registration is constructive notice of a claim of ownership so as to eliminate

any defense of good faith adoption and use made after the date of registration.  15 U.S.C A

Section 1072 provides: "Registration of a mark on the principal register provided by this Act or

under the Act on March 3, 1981, or the Act of February 20, 1905, shall be constructive notice of

the registrant's claim of ownership thereof."  Moreover, to the extent such use occurred after

11

defendant received a copy of the Complaint in this action, defendant was on notice of Patterson's claims.  Of course, the same premise applies to the notice received by defendant when it received a copy of Plaintiff's First Amended Complaint.  Accordingly, with respect to Defendant's use of SUPERSTARS OF WRESTLING in or about November and December of 2002 as demonstrated by P. Exhibit 4, defendant was on constructive notice of Patterson's right to use the mark SUPERSTARS OF WRESTLING.   With respect to defendant use of SUPERSTARS OF TNA WRESTLING and SUPERSTARS OF PROFESSIONAL WRESTLING from May/June of 2005 through at least September of 2005, defendant had both constructive notice of Patterson's right to use the mark under 15 U.S.C.A. 1072 and actual notice based on Defendant's receipt of both the Complaint and First Amended Complaint in this action.

### DEFENDANT FAILS TO MEET THE VERY STANDARDS IT ARGUED IN ITS MOTION FOR SUMMARY JUDGMENT.

Defendant correctly cited cases relating to the standards for proving a motion for summary judgment, but then blatently failed to provide the evidentiary base for its facts.  As discussed above, there is no factual basis to admit the so-called internet search.  P Ex 70.  Moreover, defendant failed to provide any support to citations for many of its so-called Uncontested Statement of Facts.  There is no required citation to the record for Support for Defendant Facts 18, 25, 26, 28, 44, 48, 49, 51, 52, 53, 55, 56, 57, 58, 60, 61, 62, 64, 65, 66, 67, 68, 69, 73, 75, and 77.  Wisconsin (ED) Civil Local Rule 56.2 provides that: "The moving papers must include either (1) stipulation of facts between the parties, or (2) the movant's proposed findings of fact supported by specific citations to evidentiary materials in the record (e.g. pleadings, affidavits, depositions, interrogatory answers, or admissions, or (3) a combination of (1) and (2)."

The Seventh Circuit Court has consistently upheld the District Court's Discretion to

12

require strict compliance with its local rules requiring specific references to record justified district court's decision to treat facts presented by plaintiff as uncontroverted. *Metropolitan Life Ins. Co. V. Johnson*, 297 F.3d 558, 562 (7th Cir 2002) also *Shneiker v. Fortos Ins. Co.*, 200 F.3d 200 F.3d 1055, 1057 (7th Cir. 2000). See also *Hartley v. Wisconsin Bell,* 930 F. Supp 349, 354 (E.D. Wis 1996).

## THERE IS A PENDING MOTION FOR LEAVE TO AMEND PLAINTIFF'S RESPONSE TO THE DEFENDANT'S REQUESTS TO ADMIT.

Patterson filed a motion for leave to amend his response to the Defendant's Requests to Admit. At the time the Requests to admit were deemed admitted in March of 2005, Plaintiff was not aware of Defendant's advertisement of its November/December 2002 shows with the banner headline NWA-TNA Superstars of Wrestling. P.Exhibit 63. This advertisement was first obtained by Patterson during an internet search on April 13, 2006. Moreover, P Exhibits 64-66 were not published until after the Requests to Admit were deemed admitted and indeed after the briefing of TNA's first Motion for Summary Judgment. Defendant is quick to claim insulation for its direct and wilful use of Patterson's mark based on the deemed admission even though much of the Defendant's use of SUPERSTARS OF WRESTLING occurs after the date of deemed admission (D Br p 9) P Exs 64-66. Defendant is playing fast and loose with the Court.

## THE DEGREE OF SIMILARITY OF THE MARKS

The Exhibits attached to Plaintiff's Motion for Partial Summary Judgment are virtually identical to Plaintiff's registered Trademark SUPERSTARS OF WRESTLING. which has been registered since October 14, 1994. P. Exs 1 and 2. The registration has a disclaimer with respect to the word "wrestling" leaving "Superstars" as the word with no disclaimer in Patterson's registered mark. Patterson's right to use that service mark has become incontestible. 15 U.S.C.S 1065 provides: ."....the right of the registrant to use such registered mark in

13

commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of the registration and is still in use in commerce shall be incontestible:.."

The use of SUPERSTARS in conjunction with professional wrestling entertainment services establishes a likelihood of confusion with Patterson's mark due to the similarity of the words "superstars" in connection with professional wrestling entertainment services. In particular, plaintiff objects to the use of TNA SUPERSTARS which essentially means TNA SUPERSTARS OF WRESTLING.

However, assuming arguendo that it does not, many variations of the use of superstars with the word wrestling are so similar that they create confusion when used in connection with professional wrestling entertainment services. For example, wrestling superstars, superstars wrestling, superstars wrestling, superstars of professional wrestling, superstars in wrestling and phrases are very similar.

Defendant argues that it can simply take Plaintiff's registered trademark by placing TNA next to SUPERSTARS OF WRESTLING and/or SUPERSTARS (Patterson's registration of SUPERSTARS OF WRESTLING disclaims "wrestling"). The use by TNA of its mark next to Plaintiff's mark results in a likelihood of confusion when Plaintiff attempts to use his mark SUPERSTARS OF WRESTLING. Even though TNA is never present in any of Patterson's advertisements, consumers may be confused as to the source when they begin to identify with TNA SUPERSTARS OF WRESTLING. Such reverse confusion has been a problem for Patterson since television stations have often refused to believe that the marks belong to Patterson due to use by competitors. When Patterson uses his mark SUPERSTARS OF WRESTLING there will be a likelihood of confusion if TNA is allowed to continue to use Patterson's marks

14

*G. Heileman Brewing Company v. Anheuser-Busch, Inc*., 873 F.3d 985 (7th Cir 1989) involved the use of unregistered initials (LA) which were found to be merely descriptive of the "low alcohol" content of the beer. Busch was the first user of LA to denote low alcohol beer and when many other beer manufacturers marketed low alcohol beer they also described that beer with the initials LA, Busch sued. All of the beer distributors had strong brand names. The Court stated, " the use of LA by Heileman and Miller in connection with strong house marks or brand names was not likely to cause confusion as to the source of the beer products." 873 F.2d at 989. Moreover, LA was not used to designate the source of the Busch beer. 873 F.2d at 977. In contrast, the case at bar does not involve two or more strong marks. Patterson's use of SUPERSTARS OF WRESTLING designates the source, and Patterson's mark has been registered for12 years.      Since TNA is a strong mark, the public would tend to be confused when Patterson tries to use his mark SUPERSTARS OF WRESTLING if TNA is allowed to place TNA next to SUPERSTARS OF WRESTLING and/or SUPERSTARS. In the past, use by competitors of SUPERSTARS OF WRESTLING has prevented Patterson from marketing his shows since television stations have not believed Patterson owned his marks.

Heileman does not stand for the proposition that a weak mark owned by a small business may be acquired by a strong mark when the strong mark associates itself with the weak mark. Moreover, SUPERSTARS OF WRESTLING is not descriptive as discussed below..

THE PRODUCTS AND SERVICES ARE SIMILAR

Both Patterson and TNA are in the business of professional wrestling entertainment services. Patterson licenses his marks for DVDs using SUPERSTARS OF WRESTLING just as TNA uses its name to sell wrestling entertainment DVDs. The wresting entertainment is similar, in that is the actors are paid to conduct a conscripted fight with costumed performers, using flying leaps, antics and gimics and an occasional wrestling hold designed to entertain. The skill

15

is in the acting and the stunts, not the wrestling    For example, in his early years Patterson

performed in the Midwest as King Kong Patterson.  TNA follows Patterson's example using

costumed personas for its actors for the purpose of entertainment.  The key to this factor is that

without the trademark and service marks such as Plaintiff's SUPERSTARS OF WRESTLING,

and defendant's TNA, the consumer cannot know the identity of the source of the performance

simply by the performance itself.

THE AREA AND MANNER OF CONCURRENT USE ARE SIMILAR.

Patterson's registration and use of SUPERSTARS OF WRESTLING is throughout the

United States.  His televised events have been broadcast through the United States on cable and

pay per view.  He has licensed his SUPERSTARS OF WRESTLING mark for televised

programming in the United States.  See P Ex. 8, 10 and 74

Admittedly, Patterson's unprofitable events have been in Wisconsin in the past few years

whereas TNA's unprofitable entertainment programming have been televised nationally.  P Ex

69.  TNA's broadcasting into Wisconsin usurps Patterson's mark and interferes with his ability to

license his mark nationally.  Moreover, the sale of licensed DVDs by each enterprise occurs is in

similar retail markets including the internet and retail outlets such as  Best Buy throughout the

United States.

TNA's argument that consumers outside the Wisconsin area are unlikely to know who

Patterson is.  Only a small percentage of television viewers will know what TNA is and very few

will know the name of their top billed actor, Jeff Jarrett.  Realistically, professional wrestling

entertainment services appeal to a small percentage of consumers making any survey difficult.

DEGREE OF CARE LIKELY TO BE USED BY CONSUMERS

.  Neither side has introduced any admissible evidence regarding the degree of care that

will be exercisable by consumers of professional wrestling entertainment services.          The

16

affidavit of Andrew Barton cannot be considered because it is not based on Mr. Barton's personal knowledge but rather is merely based of "my own knowledge and belief". Barton Affidavit DEx A. It is not clear what statements are made on Mr. Barton's knowledge and what statements are made on his beliefs. What is clear is that affidavits must be based on personal knowledge of the affiant, not his beliefs. In *Friedel v. City of Madison*, 832 F.2d 965, 969-970 (7th Cir. 1987) the court properly ignored affidavit of plaintiff's attorney that contained claims that attorney believed were true but were not based of personal knowledge. See also *Drake v. 3M* 134 F3d 878, 887 (7th Cir 1998) where the district court properly disregarded portions of affidavits submitted in opposition to summary judgment because affiant's conclusory allegations lacked factual foundation.

The Barton affidavit is ambiguous in that it is not clear whether the some statements are based on knowledge whereas other statements are based on beliefs of the affiant. For example, Barton's statement at Para 9 : "I am confident that wrestling consumers would not interpret these advertisements as promoting or advertising any product of Patterson..." is unquestionably a belief and there is no foundation that Barton has personal knowledge of this statement. Barton is not basing each statement in his affidavit on both knowledge and belief. Rather, Barton is basing some statements on knowledge and others on belief. It is not for the trier of fact to guess which statements are based on personal knowledge and which are based on belief. No statement in the Barton affidavit can be considered as evidence.

TNA's quote from Randa's opinion at page 14 is not admissible evidence. Moreover, the quote only relates to "fans" not the consumers as a whole. By Webster's definition, a fan is "an enthusiastic devote of a sport or performing art as a spectator". P Ex 71. Many consumers tune in for a few shows or events and are not "fans' in the sense that they are enthusiastic devotes or knowledgeable about the performances. There is no statistical evidence regarding the makeup of

17

consumers of professional wrestling entertainment services.

Moreover, the performances themselves suggest something about the nature of the consumer. A consistent feature of the professional wrestling entertainment services is that the events have pre-designated winners. (Discussed supra) . A second feature is that the flying leaps and garish antics would result in serious injury or death to the actors if not scripted and faked. Yet the fiction of competition is maintained, presumably to attract consumers to a scripted performance billed as a competition. The very nature of the entertainment indicates that some of the consumers may not be knowledgeable or sophisticated.

## STRENGTH OF PLAINTIFF'S MARK

Plaintiff's mark is strong in that it has been a registered mark for 12 years. Ironically, TNA in citing *McGraw-Edison Co. V. Walt Disney Prods*., 787 F.2d 1163, 1171 (7th Cir. 1986) is arguing to the effect that TNA's use as a third party weakens plaintiff's mark and with enough such use, TNA should be entitled to deny plaintiff's rights to his registered mark by placing TNA next to it. D Brief p 15. The purpose of this litigation is to prevent TNA from using plaintiff's service mark so that its distinctiveness can be maintained. *Eli Lilly & Co v. Natural Answers, Inc.,* 233 F.3d 456 (7th Cir 2000), cited by the defendant, held that showing dilution of a trademark "requires only the mere likelihood of dilution, not actual dilution." At page 15 of its brief defendant has virtually admitted that its use of TNA next to SUPERSTARS OF WRESTLING and/or SUPERSTARS causes dilution. Similarly, *Eli Lilly* held that a Lanham Act plaintiff need only establish that its mark is likely to cause confusion among consumers. *Id.*, 233 F3d at 461.

In *Lane Capital Management v. Land Capital Management*, 192 F.3d 337 (2nd Cir 1999) a small investment manager with a single offshore fund was sufficient to establish a priority in an inherently distinctive mark. In *Shine Products, Inc. V. Shelia Shine, Inc*. 486 F.2d 114, 179

U.S.P.Q. 577 (5th Cir. 1973) ten years of small, door to door sales held sufficient to establish priority).

ACTUAL CONFUSION

At the time of briefing of TNA's first motion for summary judgment and indeed until April 13, 2006 during re-opened discovery, plaintiff did not have evidence of TNA's direct use of plaintiff's mark SUPERSTARS OF WRESTLING and accordingly did not argue regarding evidence of actual confusion based on TNA's use of plaintiff's mark.. 15 U.S.C.S 1065 provides: ."....the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of the registration and is still in use in commerce shall be incontestible:..". There is a presumption that use of a registered trademark establishes actual confusion.

DEFENDANT'S INTENT

TNA was served with a copy of the Complaint in this action during 2004 and had knowledge of Patterson's claims after it received a copy of the Complaint in this action. See court record. TNA was also served with a copy of the First Amended Complaint in this action and had knowledge of Patterson's claims as alleged therein after it received a copy of the First Amended Complaint in this action. See court record. Defendant's wilful use of plaintiff's mark after receiving the complaint in this action in P Exs 64-66 demonstrates TNA's intent to wilfully use plaintiff's mark SUPERSTARS OF WRESTLING in its advertising. While the intent may not be of the passing off variety, TNA's intent is to acquire plaintiff's mark for its own use by associating Plaintiff's mark with TNA and to thus pre-empt plaintiff from using his mark for wrestling events and licensing.

_____Defendant's reliance on *Packman v. Chicago Tribune*, Id is misplaced. The Tribune used

19

the phrase THE JOY OF SIX in a news headline not associated with the sale of product of sports mementos. There was only one such news article. In contrast, TNA's use of SUPERSTARS OF WRESTLING and/or SUPERSTARS is on-going and is in advertisements for professional wrestling entertainment services. As and discussed below, plaintiff's registered mark is not descriptive. The response to the request to admit regrading intent was exclusively with respect to the period prior to service of the Complaint. Obviously, after service of the complaint on TNA, defendant was fully aware of plaintiff's claims.

## SUPERSTARS OF WRESTLING IS NOT DESCRIPTIVE AND TNA IS NOT ENTITLED TO THE FAIR USE DEFENSE

The phrase SUPERSTARS OF WRESTLING has been determined by the Patent and Trademark Office not to be descriptive by reason of its registration since 1994. P Ex 1. SUPERSTARS OF WRESTLING is not descriptive for many reasons. First, the business of professional wrestling entertainment services is not wrestling. In wrestling as a sport, the outcome of the event is not scripted, but rather, a genuinely competitive wrestling match. The sport's rules impose strict requirements to prevent serious injury to the competitors. Not so with respect to professional wrestling entertainment services where virtually anything goes in terms of the entertainment. With the absence of strict controls over the types of holds and maneuvers such as flying leaps onto ones "opponent", or the bashing of the body with a chair, comes the necessity of a scripted event carefully choreographed to prevent injury to the actors. Without a script, the wrestling entertainment performance would become a competitive, gladiator event resulting in serious injury or death in every performance. Even though the actors are very strong and healthy, every human body has weaknesses that can be exploited. For example, the neck and vertebrae. The Court may take judicial notice of Christopher Reeves, the actor who played Superman, who tragically suffered a paralyzing injury when he broke his neck falling from a

20

horse.  The bottom line is the business of professional wrestling entertainment services is not wrestling and wrestling does not describe the performance.  It follows that once the winners are pre-determined, the winning actor is not a "superstar wrestler', but merely the actor selected to win in the script.  None of the actors are really "superstars of wrestling", or "wrestling superstars" since the performance is not wrestling.  The epitome of wrestling as a sport in our time comes only at the Olympics as real athletes compete in a tightly regulated sport, not a scripted fight.

*Packman v. Chicago Tribune Co.*, 267 F3d 628 (7th Cir 2001) is distinguishable since "the joy of six" was descriptive.  The Chicago Tribune sold sports memorabilia from three discrete locations while Packman sold similar items out of her home.  The court held that the Tribune headline "the joy of six" in reference  to the Chicago Bulls' sixth championship was descriptive.   Curiously, TNA also quotes *Sunmark, Inc*. 64 F.2d at 1059 to the effect that to be descriptive, the words "merely need to refer to a characteristic of a product".[3]  The mark contested in Sunmark was SWEET TART and the use by Ocean Spray of sweat and tart conformed to the dictionary definitions of those words and was descriptive of Ocean Spray products.  As discussed above, the usage of WRESTLING SUPERSTARS does not conform to dictionary definitions of the wrestling or superstars as do the words sweet and tart.

Finally, TNA's use of SUPERSTARS does not to refer to the one or two actors in its troupe of performers who might command high salaries or have a consumer following, but rather TNA lumps all of is performers into the superstar category.  P Exs 63-66. The dictionary usage of superstars does not refer to everyone on the team, or on the stage.   That's not the dictionary usage.  TNA's failure to follow the dictionary usages is not descriptive.

---

[3] Under  the standard espoused in Sunmark, the words "total nonstop action" would lose their rights to protection since they describe the performance.

Case 2:04-cv-00192-WEC   Filed 09/11/06   Page 21 of 24   Document 127

## PATTERSON HAS NOT ABANDONED THE MARKS

P Facts 1 through 63 recite Patterson's use of the mark SUPERSTARS OF WRESTLING.   Moreover,  Patterson's most recent live event using the mark WORLD WRESTLING ASSOCIATION SUPERSTARS OF WRESTLING occurred in Milwaukee in June of 2006 .  P Fact 137. P. Ex 72.   The 2006 performance occurred shortly following Patterson's deposition in this case.  Throughout the period of the license agreements by Patterson to Madacy and Mario Salvoldi, sales of DVDs have continued.  Moreover, Dale Gagner has used Patterson's marks pursuant to the license agreement between them although Gagner is in breach of that agreement for refusal to pay amounts due.  Exhibit 74 recounts some of the use by Gagner under the license agreement with Patterson, and some of the use which was enjoined, for which Patterson in now attempting to collect through an accounting.

Once again TNA mentions Patterson's failure to earn a profit, although TNA seems to be much better at generating losses than Patterson.  P. Ex 69.   Arguments regarding the inadequacy and inadmissibility of TNA's Google search and its inadmissability as evidence have been made above.

## PLAINTIFF'S MARK IS NOT DESCRIPTIVE

As discussed above relating to fair use, Plaintiff's mark is not descriptive and those argument are incorporated herein.  Plaintiff has been using the marks SUPERSTARS OF WRESTLING to identify his professional wrestling entertainment services since 1978.  P Facts 1-62, 137.   At no time has Patterson presented  "wrestling" nor are his performers "superstars"

## PRAYER FOR RELIEF

Wherefore plaintiff prays that Defendant's Motion for Summary Judgment be denied and for such further relief that the Court in its discretion may deem appropriate.

_____

22

RESPECTFULLY SUBMITTED,

_____ ALBERT PATTERSON

_____

Charles Drake Boutwell

3075 Plum Island Drive

Northbrook, Illinois  60062

847-272-2126

847-272-2275 [Facsimile]

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on August 11, 2006, he caused a copy of the

foregoing **PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED RESPONSES TO**

**DEFENDANT'S REQUESTS TO ADMIT** to be served by electronic transmission  upon the

following to:

Douglas A. Donnell and Jenifer A. Puplava

MIKA MEYERS BECKETT & JONES, PLC.

 900 Monroe Ave.

Grand Rapids, MI 49503

By: _____

His Attorney

_

23

24